NATIONAL STEEL & SHIPBUILDING
COMPANY; American Motorists
Insurance Company, Petitioners,

v.

U. S. DEPARTMENT OF LABOR, OF-
FICE OF WORKERS' COMPENSA-
TION PROGRAMS; Phillip J. Holston,
Respondents.

No. 77–2480.

United States Court of Appeals,
Ninth Circuit.

Oct. 15, 1979.

Before GOODWIN and ANDERSON, Circuit Judges, and FERGUSON *, District Judge.

GOODWIN, Circuit Judge:

National Steel & Shipbuilding Co. appeals, as excessive, an award of disability benefits, and appeals the award of attorney's fees to its employee, Phillip Holston, under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 (1976).

I.

Holston, an electrician for National Steel, injured his right knee while on the job on August 24, 1974. The accident resulted in torn cartilage requiring surgical repair. National Steel, through its insurer, voluntarily provided Holston with medical treatment, including surgery, and paid temporary total disability benefits under the Act. These disability payments lasted from the date of the injury until Holston returned to work on May 5, 1975. During this time, there was no controversy between the parties.

Holston filed an application for permanent partial disability benefits on July 22, 1975. On January 26, 1976, an assistant deputy commissioner of the Department of Labor conducted an informal conference. 20 C.F.R. §§ 702.311–702.319 (1978). The parties were unable to agree on Holston's average weekly wage or the extent of his disability, and the assistant deputy commissioner, without making a written recommendation, referred the case to the Office of Administrative Law Judges for a formal hearing. 33 U.S.C. § 919(c), (d) (1976); 20 C.F.R. §§ 702.331–702.351 (1978).

Brundage, Williams & Zellmann, Donald W. Zellmann, William H. Taylor, San Diego, Cal., for petitioners.

Laurie M. Streeter, Associate Sol., U. S. Dept. of Labor, Gilbert T. Renaut, Washington, D.C., for respondents.

At the formal hearing, Holston contended that his average weekly wage was $244.66, and that, in light of the injury's interference with his job performance, he had been permanently partially disabled to the extent of a 25 percent loss of the use of one leg. The employer and its insurer contend-

* The Honorable Warren J. Ferguson, United States District Judge for the Central District of California, sitting by designation.

ed that the proper average wage figure was $209.44, that Holston had no ratable permanent partial disability, and that, in any event, the disability could be no greater than a 15 percent loss of use of the leg.

The Administrative Law Judge (ALJ) held that Holston's average weekly wage was, as claimed by Holston, $244.66, that assessment of Holston's disability at 20 percent of the loss scheduled for one leg was not unreasonable, and that installment payments of permanent partial disability benefits should have commenced as of September 5, 1975.[1] The ALJ then assessed an additional 10 percent of the permanent partial disability compensation owed because of the company's failure either to pay the benefits voluntarily or to file a notice of controversion disputing Holston's right to the disability benefits. 33 U.S.C. § 914(e) (1976); 20 C.F.R. § 702.251 (1978). The ALJ also ordered National Steel to pay attorney's fees of $1,200.00, because the prerequisites for limiting its liability for those fees had not been met. 33 U.S.C. § 928(b) (1976).

National Steel's petition for reconsideration of the 10 percent additional compensation and the award of attorney's fees was denied by the ALJ. The company and its insurer appealed these issues to the Benefits Review Board (BRB), which affirmed and made an additional award of $1,200.00 in attorney's fees for counsel's representation on the appeal.

## II.

The claimant suggests that we decline to exercise jurisdiction. Our power to review the BRB decision is established by 33 U.S.C. § 921(c). *National Steel & Shipbuilding Co. v. Bonner*, 600 F.2d 1288, 1290–91 (9th Cir. 1979). While the employee-claimant urges that the appeal to the BRB of the ALJ's findings did not raise "a substantial question of law or fact", as re-

quired by 33 U.S.C. § 921(b)(3), we have no choice. In *Bonner*, a case raising, *inter alia*, a challenge to the 10 percent additional compensation provision of the Act, we held:

"This court's jurisdiction under section 921(c) appears to be mandatory: 'Any person * * * aggrieved by a final order of the Board may obtain a review * * *.' If the BRB improperly heard the case, then the proper course for this court would be to vacate the Board's order. However, we defer to the BRB's implicit indication that the questions posed to it were 'substantial'. And even if we were to look more closely at the Board's decision that it had jurisdiction, we would affirm that decision. As will be seen, the issues in this case are complex. The case is full of substantial questions of statutory construction." *National Steel & Shipbuilding Co. v. Bonner*, 600 F.2d at 1291.

The considerations mandating the exercise of jurisdiction in *Bonner* are no less applicable to the instant case, and we similarly hold that we have jurisdiction to review the BRB's decision.

## III.

National Steel and its insurer object to the ALJ's imposing on them a 10 percent assessment under 33 U.S.C. § 914(e) for failure to comply with the notice requirement of 33 U.S.C. § 914(d). The two subsections provide as follows:

"(d) If the employer controverts the right to compensation he shall file with the deputy commissioner on or before the fourteenth day after he has knowledge of the alleged injury or death, a notice, in accordance with a form prescribed by the Secretary, stating that the right to compensation is controverted, the name of the claimant, the name of the employer, the date of the alleged injury or death, and the grounds upon which the right to compensation is controverted.

---

1. This date, that of Holston's "maximum medical improvement," was the date on which his partial disability was permanent. Although Holston might have been entitled to temporary partial disability benefits between the date of his return to work (when temporary total disability benefits were terminated) and this date, the claim, as is often the case, was evidently overlooked on *de minimis* grounds.

"(e) If any installment of compensation payable without an award is not paid within fourteen days after it becomes due, as provided in subdivision (b) of this section, there shall be added to such unpaid installment an amount equal to 10 per centum thereof, which shall be paid at the same time as, but in addition to, such installment, unless notice is filed under subdivision (d) of this section, or unless such nonpayment is excused by the deputy commissioner after a showing by the employer that owing to conditions over which he had no control such installment could not be paid within the period prescribed for the payment."

National Steel contends that the 10 percent assessment was improperly imposed in this case because the notice requirement refers only to disputes over the "right to compensation" and does not apply where the controversy refers to the amount of compensation that may be due. National Steel also notes that at the time notice of controversion was due—"the fourteenth day after [the employer] has knowledge of the alleged injury or death"—there was no dispute between the parties, and thus it argues that the giving of notice at that time would have been a useless act. In substance, National Steel argues that the controversion mechanism of the Act cannot apply to the controversy over permanent partial disability benefits in this case because at the time notice would be due there would be no way of knowing, both generally and particularly from the evidence in the case, whether or in what amount benefits would be awarded.

In *Bonner* we held that an employer is not required to file a notice of controversion at the outset of the claim period if there is no dispute over compensation benefits at that time. Rather, the notice requirement is not triggered until the employer has reason to believe a controversy will arise, whether because of the employer's own actions in terminating or reducing benefits previously paid voluntarily or because of an employee's protests or claims with respect to compensation. Once the employer has reason to believe that a controversy has

arisen or will arise, however, it must file the notice of controversion within 14 days or be liable for the 10 percent assessment computed on all amounts unpaid between the time notice should have been filed and the time notice is filed (or the time the Department of Labor acquires knowledge of the facts that a proper notice would have revealed). *National Steel & Shipbuilding Co. v. Bonner*, 600 F.2d at 1294–95.

■ We note that this approach substantially comports with the interpretation and policy now followed by the BRB. Until recently, the BRB routinely imposed the 10 percent assessment whenever the notice of controversion was not filed within the 14-day period following receipt of notice of the employee's injury or death. *See, e. g., Alston v. United Brands*, BRB No. 76–296, 5 BRBS 600 (1977); *Caramagna v. Campbell Machine, Inc.*, BRB No. 75–115, 1 BRBS 446 (1975). However, the Board has now overruled those decisions and holds that the assessment applies only to payments not made from the time the employer learns of the disability to the date a notice is finally filed. *Oho v. Castle & Cooke Terminals, Ltd.*, BRB Nos. 78–128 and 78–128A, 9 BRBS 989 (1979). *Accord, Devillier v. National Steel & Shipbuilding Co.*, BRB No. 78–278, 10 BRBS 649 (1979); *Vishniac v. The University of Rochester*, BRB Nos. 78–630 and 78–630A, 10 BRBS 475 (1979).

Applying these principles to the instant case, we conclude that imposition of a 10 percent assessment in this case was substantially correct. National Steel may have had reason to believe a controversy would arise when it terminated the voluntary payment of benefits on May 5, 1975, and must have known that a controversy existed when it received notice of Holston's claim for permanent partial disability benefits in July. *See* 20 C.F.R. §§ 702.215, 702.251 (1978). Because the ALJ found that Holston's right to these benefits did not arise until September 9, 1975, we need not determine which of the earlier dates might control in different circumstances. National Steel is accordingly liable to Holston for 10

percent of the disability compensation unpaid between September 9, 1975, and the day the Department received notice of the facts that a proper notice of controversion would have revealed.

In *Bonner*, we noted that the Department clearly had notice of the relevant facts on the date the informal conference was held, but remanded for further factfinding as to whether the Department had notice at an earlier date. We do not believe, however, that such a remand is appropriate in every case. The Act contemplates and encourages the voluntary payment of compensation by employers without the need for formal adversary hearings in every case. *See Strachan Shipping Co. v. Hollis*, 460 F.2d 1108, 1115 (5th Cir.), *cert. denied*, 409 U.S. 887, 93 S.Ct. 114, 34 L.Ed.2d 144 (1972). We note with approval the BRB's analysis of the role played by the notice of controversion in this scheme:

> "The notice of controversion serves a useful purpose in the administration of the Act. In many cases it is the first document which apprises the deputy commissioner of the existence of a disputed claim. It enables the deputy commissioner to contact the claimant at an early stage and inform claimant that he may be eligible for benefits under the Act. Also, the notice of controversion requires the employer to state the grounds for its denial of liability. This encourages the early settlement of claims, expedites the investigatory process, and allows for prompt scheduling of contested matters for informal conference." *Oho v. Castle & Cooke Terminals, Ltd.*, 9 BRBS at 992.

*See Universal Terminal & Stevedoring Corp. v. Parker*, 587 F.2d 608, 611 (3d Cir. 1978). The 10 percent assessment for failure to file the notice acts as an incentive to induce employers to bear their burden under the Act and bring any compensation disputes to the attention of the Department. *See Oho v. Castle & Cooke Terminals, Ltd.*, 9 BRBS at 993.

■ Although we remain the final interpreters of the meaning of the Act (*cf. FMC v. Seatrain Lines, Inc.*, 411 U.S. 726, 745–46, 93 S.Ct. 1773, 36 L.Ed.2d 620 (1975); *Hart v. McLucas*, 535 F.2d 516, 520 (9th Cir. 1976)), we will respect the interpretation of the BRB, as evidenced by its recent decisions, where that interpretation is reasonable and reflects the policy underlying the statute. *See National Steel & Shipbuilding Co. v. Bonner*, 600 F.2d at 1295 n.3. We agree that Congress intended the 10 percent assessment to act as an incentive to employers' filing the notice of controversion as required. Accordingly, we believe this policy may best be effectuated by establishing the date of the informal conference as the cutoff point for calculation of the 10 percent assessment. Once a controversy has arisen, of course, the employer may avoid imposition of the assessment on future payments by filing notice of controversion and providing the Department with the required information. Where the employer does not provide the information, it would take extraordinary circumstances, not present here, to excuse the failure. That the Department fortuitously may have acquired this information in another manner should not operate to allow the employer to avoid its burden under the Act.

We therefore hold that, for purposes of the test established in *Bonner*, the date "the Department knew of the facts a proper notice would have revealed" is the date of the informal conference. Because the award in the instant case imposed the assessment on all compensation payments not made between September 5, 1975, and the date of the ALJ's order, we reverse to that limited extent and order that the 10 percent assessment be imposed only on those payments not made between September 5, 1975, and the time of the informal conference on January 26, 1976.

■ One final matter remains to be addressed with respect to the 10 percent assessment. National Steel contends that the payments of permanent partial disability benefits were not made because Holston failed to present medical evidence of his condition at an early date and the company therefore lacked "knowledge" with respect to his entitlement to the benefits. National

Steel accordingly argues that its failure to make the payments is excused because it was "owing to conditions over which [the employer] had no control". 33 U.S.C. § 914(e) (1976).

Overlooking National Steel's failure to seek this relief from the deputy commissioner as required by the statute, we find the argument unpersuasive. In light of the overall structure of the Act, the clear meaning of this provision is to avoid penalizing an employer where the failure to make a payment is caused by practical impediments to the delivery of the compensation; it is inapplicable where the condition is merely the employer's inability to predict the outcome of litigation. National Steel could have avoided imposition of the assessment at any time by filing a proper notice of controversion.

### IV.

■ National Steel and its insurer also object to the ALJ's award of attorney's fees to Holston under 33 U.S.C. § 928(b). That subsection provides:

"(b) If the employer or carrier pays or tenders payment of compensation without an award pursuant to section 914(a) and (b) of this title, and thereafter a controversy develops over the amount of additional compensation, if any, to which the employee may be entitled, the deputy commissioner or Board shall set the matter for an informal conference and following such conference the deputy commissioner or Board shall recommend in writing a disposition of the controversy. If the employer or carrier refuse to accept such written recommendation, within fourteen days after its receipt by them, they shall pay or tender to the employee in writing the additional compensation, if any, to which they believe the employee is entitled. If the employee refuses to accept such payment or tender of compensation, and thereafter utilizes the

services of an attorney at law, and if the compensation thereafter awarded is greater than the amount paid or tendered by the employer or carrier, a reasonable attorney's fee based solely upon the difference between the amount awarded and the amount tendered or paid shall be awarded in addition to the amount of compensation. The foregoing sentence shall not apply if the controversy relates to degree or length of disability, and if the employer or carrier offers to submit the case for evaluation by physicians employed or selected by the Secretary, as authorized in section 907(e) of this title and offers to tender an amount of compensation based upon the degree or length of disability found by the independent medical report at such time as an evaluation of disability can be made. If the claimant is successful in review proceedings before the Board or court in any such case an award may be made in favor of the claimant and against the employer or carrier for a reasonable attorney's fee for claimant's counsel in accord with the above provisions. In all other cases any claim for legal services shall not be assessed against the employer or carrier."

National Steel contends that the award of attorney's fees by the ALJ in this case was improper because the assistant deputy commissioner failed to make a written recommendation for the disposition of the case and thus, the company rejected no such recommendation.[2] National Steel therefore contends that the elements of subsection (b), which it regards as preconditions to the imposition of liability for fees, were not present. Alternatively, the company objects to the amount of the award, contending that $1,200.00 is an unreasonable fee where the amount awarded exceeded the amount tendered by only $2,156.69 over the life of the award and that counsel should receive at most 25 percent of that figure since the offer to pay benefits in accordance with a 15 percent disability constituted 75

2. National Steel has raised no issue on this appeal with respect to the award of attorney's fees by the BRB for counsel's efforts on the administrative appeal. Because Holston was

successful in those proceedings, and in light of the considerations expressed hereinafter, we would have affirmed the second award in any event.

percent of the award of benefits for a 20 percent disability.[3]

In the circumstances of this case, neither of these arguments has merit. The purpose of the statute is to authorize the assessment of legal fees against employers in cases where the existence or extent of liability is controverted and the employee-claimant succeeds in establishing liability or obtaining increased compensation in formal proceedings in which he or she is represented by counsel. 1972 U.S.Code Cong. & Admin. News., pp. 4698, 4706, 4717. *See Portland Stevedoring Co. v. Director, Office of Workers' Compensation Programs*, 552 F.2d 293, 294 (9th Cir. 1977). The statute provides methods by which the employer can limit its liability for fees through agreeing to independent medical evaluation of the employee or by tendering the amounts it believes are due. *See Universal Terminal & Stevedoring Corp. v. Parker*, 587 F.2d at 612; *Atlantic & Gulf Stevedores, Inc. v. Director, Office of Workers' Compensation Programs*, 542 F.2d 602, 609–10 (3d Cir. 1976).

We do not believe that the statute contemplates the making of a written recommendation by the deputy commissioner as a precondition to the imposition of liability for attorney's fees. The congressional intent was to limit liability to cases in which the parties disputed the existence or extent of liability, whether or not the employer had actually rejected an administrative recommendation. *Cf. Universal Terminal & Stevedoring Corp. v. Parker*, 587 F.2d at 610, 612 (award of attorney's fees upheld where *employee* rejected recommendation); *Barber v. Tri-State Terminals, Inc.*, BRB Nos. 75–177 & 75–177A, 3 BRBS 244, 251 (1976) (same).

█ Even were we to view the language requiring a written recommendation as a precondition to liability for fees, we would not set aside the instant award. The recommendation following the informal conference in this case was for the matter to "be referred to the Office of Administrative Law Judges for formal hearing at the request of both parties". It is thus evident that agreement was not reached at the conference and that any explicit recommendation would have been rejected by one of the parties. We agree with the ALJ that National Steel's failure to bring this deficiency to the attention of the ALJ until it filed its petition for reconsideration of the ALJ's order thwarted any possibility of achieving a timely compliance with the statute and does not constitute ground for setting aside the fee award.

█ We further find that the amount of $1,200.00 was not an unreasonable award in this case. Although the fee is to be "based solely upon the difference between the amount awarded and the amount tendered or paid", counsel's efforts in this case were devoted solely to obtaining that difference, and we discern no basis for lessening the award merely because National Steel had offered to pay a lesser amount voluntarily. Nor is the award unreasonable because it amounts to 56 percent of the disability benefits National Steel is required to pay. Such a prima facie test is inappropriate to the determination of a reasonable fee. *Cf. Barber v. Tri-State Terminals, Inc.*, 3 BRBS at 252 (reasonable attorney's fee may equal or exceed the difference in amount between offer and award). The reasonable fee in a given case will depend upon a number of factors, including the complexity of the issues and the quality of representation. *See* 20 C.F.R. § 702.132 (1978). We hold that the fee awarded in this case was well within reason in light of those factors.

Finally, we note in passing that although all parties to this appeal, as well as the ALJ and BRB, have apparently accepted the application of section 928(b) to this case, it is not clear that the provisions of section 928(a) are inapplicable. The subsection provides, in pertinent part:

---

**3.** Nothing turns on the point, but we note that respondents are correct in pointing out that the award obtained (a 20% disability) exceeds that offered (a 15% disability) by 33⅓ percent. That figure, rather than the 25 percent figure suggested by the company, would be useful were we to accept the company's percentage argument as to the calculation of a proper fee.

"(a) If the employer or carrier declines to pay any compensation on or before the thirtieth day after receiving notice of a claim for compensation having been filed from the deputy commissioner, on the ground that there is no liability for compensation within the provisions of this chapter, and the person seeking benefits shall thereafter have utilized the services of an attorney at law in the successful prosecution of his claim, there shall be awarded, in addition to the award of compensation, in a compensation order, a reasonable attorney's fee against the employer or carrier * * * ."

Although National Steel did not decline to pay "*any* compensation" (emphasis added) in the sense that it voluntarily paid temporary total disability benefits, it did initially decline to pay any of the compensation sought by Holston for his permanent partial disability. Holston filed this claim seeking compensation different in kind as well as amount from that he had received previously, and the very existence of liability for that compensation was disputed by National Steel. Accordingly, attorney's fees might well have been awarded under subsection (a) in this case. *Cf. Presley v. Tinsley Maintenance Service,* 529 F.2d 433, 435, 437 (5th Cir. 1976) (analyzing issue of attorney's fees under section 928(a) where employer had paid permanent partial disability benefits but controverted the right to permanent total disability benefits). Because we affirm the award of fees under subsection (b), we need not decide in what circumstances fees could properly be awarded under subsection (a).[4]

## V.

 Holston has requested attorney's fees on appeal pursuant to 33 U.S.C. § 928(b). The statute allows attorney's fees

to a claimant who is successful in review proceedings before this court. In this case, the claimant was for the most part successful, although the effect of our decision is to diminish the amount he will be entitled to recover in the form of a 10 percent assessment on the disability benefits payable. We therefore find that attorney's fees should be awarded, but we are unable to fix the amount at this time.

We have previously announced that the procedure to be followed in seeking attorney's fees from the court under section 928 is that first outlined by the Third Circuit. *National Steel & Shipbuilding Co. v. Bonner,* 600 F.2d at 1295. That procedure is as follows:

" * * * [W]e will determine in connection with consideration of the merits of the appeal whether or not an award will be made. Thereafter we will consider an application by motion to the same panel which heard the appeal, on notice to the employer, supported by an affidavit setting forth those considerations which claimant's attorney believes should govern the amount to be awarded. The employer will be afforded an opportunity to respond by brief, and by affidavit if it deems such response appropriate. Ordinarily, the panel will determine the amount of the award on these papers, but it may by order in appropriate cases determine to hear argument. * * * Disclosure of the hours devoted to each category of work in connection with the appeal and the reasonable hourly rate for the person performing the work is an essential element of every application. We also call counsel's attention to the provisions of 33 U.S.C. § 928(e) requiring judicial approval for any arrangement for the sharing of fees. If there is any such arrangement, it should be disclosed in the application." *Atlantic & Gulf Steve-*

---

4. Although neither the ALJ nor the BRB considered the application of subsection (a) to the award of attorney's fees in this case, we would not therefore be precluded from affirming on that ground under the same theory that allows us to affirm a district court on different grounds. *See Atlantic & Gulf Stevedores, Inc., v. Director, Office of Workers' Compensation*

*Programs,* 542 F.2d at 605 n.2. *Cf. Puget Sound Gillnetters Ass'n v. United States District Court,* 573 F.2d 1123, 1131 n.12 (9th Cir. 1978) (appellate court may affirm on any theory which finds support in the record), *vacated on other grounds,* —— U.S. ——, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979).

*dores, Inc. v. Director, Office of Workers' Compensation Programs,* 542 F.2d at 610.

In adopting this procedure we are in agreement with other circuits considering the same issue (*see Newport News Shipbuilding & Dry Dock v. Graham,* 573 F.2d 167, 171 (4th Cir. 1978), *cert. denied,* 439 U.S. 979, 99 S.Ct. 563, 58 L.Ed.2d 649 (1979); *Ayers Steamship Co. v. Bryant,* 544 F.2d 812, 814 (5th Cir. 1977)), and in conformity with our own case law. *See Todd Shipyards Corp. v. Director, Office of Workers' Compensation Programs,* 545 F.2d 1176, 1180–81 (9th Cir. 1976).

We now turn to an examination of the request before us. Under our guidelines, the request is inadequate. The itemization of hours does not clearly indicate the category of work involved in the various stages of this appeal; nor does it adequately indicate by whom the work was performed or the reasonable hourly rate for such person. Finally, it is not clear that the itemization is adequately verified, and, in light of the scope of the itemization, we would once again draw counsel's attention to 33 U.S.C. § 928(e).

Despite these inadequacies, we, like the Fifth Circuit, cannot fault the claimant and his attorney for failing as prophets. *See Ayers Steamship Co. v. Bryant,* 544 F.2d at 814–15. We therefore make the following order:

(1) The claimant may file a motion for attorney's fees in accordance with the above procedures within twenty-one (21) days of the date of this order; and

(2) The employer may respond by brief or by affidavit, if it deems such response appropriate, within thirty-five (35) days of the date of this order.

We will retain jurisdiction of this case to the extent required to fix attorney's fees and will make that determination upon receipt of a timely motion as provided for above.

Affirmed in part, reversed in part, counsel for the claimant will prepare a form of judgment and submit it with the amended claim for attorney's fees.