*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0002a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

PITTSBURGH & CONNEAUT DOCK CO., et al.,

  *Petitioners,*

  *v.*

  No. 05-3425

DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES, et al.,

  *Respondents.*

---

On Petition for Review of an Order
of the Benefits Review Board,
United States Department of Labor.
No. 04-483 BRB.

Argued: January 25, 2006

Decided and Filed: January 4, 2007

Before: MOORE and McKEAGUE, Circuit Judges; POLSTER, District Judge.[*]

---

**COUNSEL**

---

**ARGUED:** Gregory P. Sujack, GAROFALO, SCHREIBER, HART & STORM, Chicago, Illinois,
for Petitioners. Steven C. Schletker, STEVEN SCHLETKER, ATTORNEY AT LAW, Covington,
Kentucky, for Respondents. **ON BRIEF:** Gregory P. Sujack, GAROFALO, SCHREIBER, HART
& STORM, Chicago, Illinois, for Petitioners. Steven C. Schletker, STEVEN SCHLETKER,
ATTORNEY AT LAW, Covington, Kentucky, for Respondents.

  McKEAGUE, J., delivered the opinion of the court, in which POLSTER, D. J., joined.
MOORE, J. (pp. 12-17), delivered a separate opinion concurring in part and dissenting in part.

---

**AMENDED OPINION**

---

  McKEAGUE, Circuit Judge. This case arises out of a claim for worker's compensation
benefits under the Longshore and Harbor Workers' Compensation Act ("Longshore Act"). 33
U.S.C. § 901, *et seq.* Thomas Bordeaux was injured in the course and scope of his employment, and

---

[*]The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by
designation.

1

his employer began voluntarily paying him temporary disability benefits. A dispute later developed over whether Bordeaux's disability was permanent. A formal hearing was held before an Administrative Law Judge ("ALJ") who determined that both Bordeaux's physical and cognitive disabilities were permanent and total. Bordeaux's employer, Pittsburgh & Conneaut Dock Co. ("P & C Dock") appealed the determination of permanency with respect to Bordeaux's cognitive disability to the Benefits Review Board ("BRB"). P & C Dock also appealed the ALJ's decisions to deny a motion to compel filed by P & C Dock and to require P & C Dock to pay Bordeaux's attorney's fees. The BRB affirmed the ALJ on all points, although it affirmed the award of attorney's fees on an alternate basis. P & C Dock filed a timely notice of appeal. For the reasons set forth below, we affirm the determinations on permanency and the motion to compel, but vacate the assessment of liability for attorney's fees.

## I. BACKGROUND

Thomas Bordeaux began working at P & C Dock in 1997. He worked as a structural welder initially and then as a pipe fitter. Bordeaux was injured on September 12, 2000. While he was working in a catch basin, a fifty-pound sandbag fell into the pit and struck him on the base of his head and neck, missing his hard hat. Bordeaux estimated that the sandbag fell approximately twelve to fourteen feet before hitting him. Following treatment at the emergency room, Bordeaux was released. He returned to the hospital the following day because he was having difficulty formulating any kind of sentence and was suffering extreme headaches. After his visit to the emergency room, Bordeaux was treated for a right wrist fracture and underwent extensive therapy for his neck and wrist. Bordeaux testified that two to three months following his accident he continued to have episodes of numbness and tingling in his head, occasionally leading him to become dizzy and pass out. Bordeaux also indicated he was having difficulty with focusing and his attention span.

Bordeaux underwent extensive medical treatment for both his neck and wrist injuries and his cognitive problems. Throughout 2000, 2001, and into 2002 he attended numerous physical therapy sessions before being discharged when his progress reached a plateau. At the time of the formal hearing, he continued to treat with Dr. Rematullah, his primary treating physician. Bordeaux testified that he was still suffering from stiffness and pain in his neck and that he would still get headaches. Dr. Rematullah testified that maximum medical improvement for Bordeaux's head and neck injuries was reached on August 20, 2002.

Bordeaux also attended numerous speech therapy sessions. The speech therapy was in the form of cognitive therapy which was designed to aid him in his day-to-day activities such as remembering people's names, numbers and appointments. Therapy was also designed to help him read due to complaints that he had been unable to concentrate for more than ten minutes. Bordeaux indicated that the speech sessions were beneficial and that he was able to increase his concentration time from ten to twenty minutes.

Bordeaux's wife stated that prior to his accident in September of 2000, Bordeaux was in good shape and had no problems with his memory. The day following his accident she noticed that he was a little slow with his speech, and he indicated that he was having trouble getting his thoughts together. Mrs. Bordeaux also noted that Bordeaux seemed somewhat confused following his accident and was not able to focus on what was going on around him. Bordeaux's speech and focus steadily improved for six to eight months. After that, she believed that his progress plateaued. She believed that he continued to have memory problems and problems focusing.

In May of 2001, Bordeaux began taking Zoloft, an antidepressant medication, at the suggestion of psychologist Dr. Schwabenbauer. The prescription for Zoloft was discontinued approximately a month later when Bordeaux presented to his family physician, Dr. Choi, with

unusual symptoms including cold sweats and elevated blood pressure. Bordeaux's medical records show that he subsequently was prescribed, and demonstrated an intolerance for, several other antidepressant medications including Nortriptoline, Depakote, Elavil, and Doxepin.

At the formal hearing, deposition testimony from three doctors was submitted that addressed the state of Bordeaux's cognitive limitations. Dr. Schwabenbauer pointed out that Bordeaux was well beyond the six to twelve month primary recovery period for head injuries and opined that his cognitive limitations had reached maximum medical improvement. The doctor also indicated that further individual psychotherapy and antidepressant therapy could assist Bordeaux in dealing with the "emotional residuals" of his head injury although they would not enable any further recovery in the area of cognitive function. Dr. Schwabenbauer acknowledged that the further therapy he was suggesting should help Bordeaux with his anxiety and depression which could, in turn, have an impact on whether he could return to work. The doctor stated that he had no way to estimate the likelihood that Bordeaux would see beneficial results from the suggested therapy. When asked whether the chance was better than a coin flip, he responded that it was "[p]robably better than a coin flip, but it could be very difficult to predict someone's response to treatment in advance."

Dr. McCue, a neuropsychologist, examined Bordeaux in January and February of 2003. While he initially stated that Bordeaux had not yet reached maximum psychological improvement, later in his deposition he stated that the cognitive limitations Bordeaux was suffering were permanent and that Bordeaux had reached maximum medical improvement. Dr. McCue testified that a course of psychotherapy (including antidepressant medication), cognitive rehabilitation, and vocational rehabilitation had a very good chance of enabling Bordeaux to return to work. Dr. McCue acknowledged that he was making his suggestions without being aware of whether any of those treatments had already been employed. Since he was not familiar with the treatment Bordeaux had previously undergone, Dr. McCue could not determine whether Bordeaux had already received some or all of the types of treatment he was recommending.

Bordeaux's treating neurologist, Dr. Lyons, treated Bordeaux for his head injury, not for any underlying psychological condition. When asked whether she agreed with the recommendations for additional psychotherapy made by Drs. Schwabenbauer and McCue, Dr. Lyons replied that she "was in no position to disagree." She went on to opine that the proposed treatment would not treat the underlying cognitive condition or significantly improve Bordeaux's degree of cognitive limitation. As to Bordeaux's ability to return to work after undergoing the proposed treatment, Dr. Lyons opined that there was a twenty percent chance that it would help him return to work and an eighty percent chance that it would help him feel better. Dr. Lyons further testified that returning Bordeaux to work by relieving his symptoms of anxiety and depression was "worth trying," but she commented that "I don't think it is going to happen."

On January 21, 2004, the ALJ entered an order awarding benefits under the Longshore Act. Following an extensive review of the evidence, the ALJ awarded permanent and total disability benefits. He found August 20, 2002 to be the date Bordeaux became permanently and totally disabled. Temporary total disability was awarded for the preceding period. Medical benefits were also awarded. While the matter had been pending before the ALJ, P & C Dock had requested the ALJ to compel Bordeaux to participate in the psychotherapy that had been recommended. The ALJ refused this request in the order awarding benefits. In a supplemental proceeding, the ALJ ordered P & C Dock to pay Bordeaux's attorney's fees pursuant to 33 U.S.C. § 928(a).

P & C Dock appealed the decision awarding compensation and denying the motion to compel and the award of attorney's fees to the Benefits Review Board ("BRB"). The BRB affirmed the decision of the ALJ that Bordeaux was permanently and totally disabled. The BRB also upheld the refusal of the ALJ to direct Bordeaux to pursue the prescribed psychotherapy. Next, the BRB

upheld the award of attorney's fees. However, it found that the fees should not have been awarded under § 928(a), but were properly awarded under § 928(b). Finally, the BRB awarded fees to Bordeaux's counsel for services rendered before the BRB. P & C Dock timely appealed all of the BRB's determinations.

## II. ANALYSIS

### A.    Standard of Review

This court reviews ALJ and BRB decisions on a limited basis. *Morehead Marine Services, Inc. v. Washnock,* 135 F.3d 366, 370 (6th Cir. 1998). The decision of an ALJ is reviewed to determine whether it is supported by substantial evidence and consistent with applicable law. *See O'Keeffe v. Smith, Hinchman & Grylls Assocs.*, 380 U.S. 359, 362 (1965); *Consolidation Coal Co. v. Worrell*, 27 F.3d 227, 230-31 (6th Cir. 1994). The BRB's legal conclusions are reviewed de novo, and this court reviews the record independently to determine if the BRB properly ruled on whether the ALJ's findings are supported by substantial evidence. *Paducah Marine Ways v. Thompson*, 82 F.3d 130, 133 (6th Cir. 1996); *Brown v. ITT/Continental Baking Co.*, 921 F.2d 289, 293 (D.C. Cir. 1990). "When the question is whether the ALJ reached the correct result after weighing conflicting medical evidence, our scope of review . . . is exceedingly narrow." *Worrell*, 27 F.3d at 230-31. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard v. Secretary of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *see also Paducah Marine Ways*, 82 F.3d at 133. "The record must be reviewed as a whole, including whatever in the record fairly detracts from its weight." *Paducah Marine Ways*, 82 F.3d at 133 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545-46 (6th Cir. 1986) (en banc)).

### B.    Permanent Disability

After the formal hearing, the ALJ found that Bordeaux was permanently and totally disabled. P & C Dock appealed this determination to the BRB which affirmed the ALJ's determination. P & C Dock acknowledges that the ALJ correctly determined that Bordeaux's physical injuries had reached maximum medical improvement, but argues that his cognitive impairment was temporary because several experts opined that Bordeaux would benefit from additional psychotherapy. The ALJ's determination that Bordeaux's disability was permanent is based on substantial evidence and consistent with applicable law.

There are two separate tests for determining whether and when a disability has become permanent under the Longshore Act. *E.g., Eckley v. Fibrex & Shipping Co.*, 21 BRBS 120, 122-23 (1988). Under the first test a residual disability is considered permanent when an employee's condition reaches the point of maximum medical improvement. *James v. Pate Stevedoring Co.*, 22 BRBS 271, 274 (1989); *Phillips v. Marine Concrete Structures*, 21 BRBS 233, 235 (1988). Under the second test, even if a person has not reached maximum medical improvement, his or her disability is still considered permanent if it "has continued for a lengthy period, and it appears to be of lasting or indefinite duration, as distinguished from one in which recovery merely awaits a normal healing period." *Watson v. Gulf Stevedore Corp.*, 400 F.2d 649, 654 (5th Cir. 1968). The *Watson* test allows for a determination of permanency even when the disability is not "pronounced medically incurable."[1] *Id.*

---

[1]If an employee's condition does improve after he or she has been determined to be permanently disabled, the employer may have the employee's condition reviewed and re-evaluated under the modification procedure set forth in 33 U.S.C. § 922.

P & C Dock argues that it was error for the ALJ to find that Bordeaux's cognitive impairment was permanent because Drs. Schwabenbauer, McCue, and Lyons opined that there was a possibility that Bordeaux's cognitive impairment would improve in the future with additional psychotherapy and antidepressant medication. Specifically, P & C Dock points out that Dr. Schwabenbauer testified that the chances Bordeaux would benefit from additional psychotherapy were "probably better than a coin flip, but it could be very difficult to predict someone's response to treatment in advance." Dr. Lyons opined that there was a twenty percent chance psychotherapy would help Bordeaux return to work and an eighty percent chance it would help him feel better. According to P & C Dock, this medical evidence that there was a possibility of improvement precludes a finding that Bordeaux's cognitive disability had reached maximum medical improvement.

P & C Dock's argument addresses the first test for disability, but ignores the second. The entirety of its argument is based on the premise that the possibility of improvement in the future necessarily precludes a finding of permanency. The case law is replete with statements to the contrary. *Watson*, 400 F.2d at 654 ("[T]he determination that a disability is temporary rather than permanent need not be reached merely because the medical prognosis is that the employee is likely at some indefinite future date to get better and to be able to return to work."); *Air America, Inc. v. OWCP*, 597 F.2d 773, 781 (1st Cir. 1979) ("To be considered permanent, a disability need not be eternal or everlasting."); *Mills v. Marine Repair Service*, 21 BRBS 115 (1988) (holding that where medical evidence "established that the employee's condition was of lasting and indefinite duration[,] the prognosis that the employee's condition may have improved in the future does not preclude a finding of permanency."); *Walsh v. Vappi Construc. Co.*, 13 BRBS 442, 445 (1981) ("A finding of permanency is not precluded by a medical prognosis that the employee is likely to get better at some future date and to be able to return to work."); *Meecke v. I.S.O. Personnel Support Dept.*, 10 BRBS 670, 675-76 (1979) ("[T]he determination that one has not sustained permanent disability may not be based on a medical prognosis that the claimant is likely at some indefinite future date to get better."); *White v. Exxon Co.*, 9 BRBS 138, 142 (1978) ("[T]he possibility of favorable change does not foreclose a finding of permanent disability."). Where the *Watson* test is met, a disability is permanent notwithstanding a medical prognosis that includes the possibility of the employee's condition improving at some future date.

There is substantial evidence in the record to support the ALJ's conclusion that Bordeaux's cognitive disability was permanent under the *Watson* test. Dr. Schwabenbauer testified that six to twelve months was the primary recovery period for a head injury such as the one Bordeaux suffered. The ALJ pointed out that Bordeaux's cognitive limitations had lasted for more than a year and a half beyond the primary recovery period. There was no testimony that Bordeaux's cognitive limitations were actually improving at the time of the formal hearing. Drs. Schwabenbauer and Lyons, the two doctors who were familiar with the treatment Bordeaux had undergone, both pointed out that any additional improvement brought on by additional therapy would only be in the manner Bordeaux deals with his cognitive limitation. Neither doctor anticipated a decrease in the underlying limitation itself. Looking at the record as a whole, there is substantial evidence for the conclusion that Bordeaux's cognitive limitation had "continued for a lengthy period, and it appear[ed] to be of lasting or indefinite duration, as distinguished from one in which recovery merely awaits a normal healing period." *Watson*, 400 F.2d at 654.

## C.    Motion to Compel

After the formal hearing, but before the ALJ issued his decision, P & C Dock filed a motion to compel requesting the ALJ to issue an order directing Bordeaux to participate in the recommended course of psychotherapy or have his worker's compensation payments suspended. The ALJ first observed that this motion was not timely, but proceeded to declare that it also failed

on the merits because Bordeaux's refusal to participate in the suggested psychotherapy was not unreasonable. P & C Dock challenges both determinations. We do not need to reach the timeliness issue because the ALJ's decision on the merits was supported by substantial evidence in light of the whole record and was consistent with applicable law.

> The Longshore Act provides that:
>
> If at any time the employee unreasonably refuses to submit to medical or surgical treatment, or to an examination by a physician selected by the employer, the Secretary or administrative law judge may, by order, suspend the payment of further compensation during such time as such refusal continues, and no compensation shall be paid at any time during the period of such suspension, unless the circumstances justified the refusal.

33 U.S.C. § 907(d)(4). This provision requires a dual inquiry. *Malone v. Int'l Terminal Operating Co.*, 29 BRBS 109 (1995); *Hrycyk v. Bath Iron Works Corp.*, 11 BRBS 238, 240-41 (1979). Initially, the employer has the burden to establish that the claimant's refusal to undergo treatment is objectively unreasonable. *Hrycyk*, 11 RBRS at 241-42. If the employer carries its initial burden, the claimant has an opportunity to establish that his or her refusal was justified by the circumstances. *Id*. at 242-43. Only if the refusal is found to be both unreasonable and unjustified may compensation be suspended. *Id*. at 241-43. This case only reaches the first prong because the ALJ properly found that P & C Dock did not carry its burden on that point.

The determination of whether the refusal of medical treatment is unreasonable is an issue of fact which must be upheld if it is supported by substantial evidence in light of the whole record. *See Profitt v. DeAtley-Overman, Inc*, 384 P.2d 473, 475 (Idaho 1963); *Stawizynski v. J.S. Alberici Construc. Co.*, 936 S.W.2d 159 (Mo. Ct. App. 1996). The Benefits Review Board has stated that the reasonableness inquiry essentially boils down to the following question: "what course would an ordinary person in the claimant's condition pursue after weighing the risks and rewards of the procedure with the alternatives of continued pain and restriction?" *Hrycyk*, 11 RBRS at 241-42.

The ALJ determined that Bordeaux's refusal to undergo the suggested psychotherapy was not unreasonable. The essential reasons the ALJ reached this conclusion were that the suggested treatment would require Bordeaux to take antidepressants and that Bordeaux testified at the hearing that he was not depressed. The ALJ pointed out that between the time of the injury and the formal hearing Bordeaux had been prescribed various antidepressant medications which had all been discontinued by his doctor due to his inability to tolerate them. A reasonable mind could conclude that an ordinary person who did not feel depressed would decide not to pursue a course of treatment directed at resolving depression when such treatment would involve taking antidepressant medications towards which he had previously demonstrated considerable intolerance.

P & C Dock is unable to point to a sufficient basis for overturning the ALJ's determination that Bordeaux's refusal of the psychotherapy was not unreasonable. P & C Dock argues that Bordeaux's refusal must be unreasonable because there was testimony that the psychotherapy might have helped him feel better or return to work or both. Although this is the case, it is not a basis for overturning the ALJ's determination. The reasonableness determination must be made by considering how an ordinary reasonable person in the claimant's condition would weigh the risks as well as the potential benefits. The mere fact that the record contains some evidence of a potential benefit from a proposed treatment does not mandate that any refusal of that treatment would be unreasonable. Presumably in every case where a treatment has been suggested there is some possible benefit or the treatment would not have been proposed. Possible risks must be considered

as well.  There is no argument that there was no risk.  P & C Dock does not (and cannot) claim that the record fails to demonstrate Bordeaux's noted difficulties with antidepressants.

P & C Dock points to two purportedly similar cases in which refusal of medical treatment was held unreasonable.  The first case upheld an ALJ's determination that refusal to undergo conservative, non-invasive treatment for a back injury was unreasonable.  *Profitt v. DeAtley-Overman, Inc*, 384 P.2d 473, 475-76 (Idaho 1963).  However, in that case there was no indication of any particular risks from the treatment, and the only reason the claimant gave for refusing the treatment was that his employer did not bow to his demands to pay compensation for a previous time period.  *See id.*  Refusing treatment simply as leverage to extort compensation from an employer is not a reasonable basis to refuse treatment.  P & C Dock does not point to any evidence that indicates that Bordeaux refused treatment for such an illegitimate purpose.[2]  The only other case P & C Dock points to mentioned the possibility of suspending payments for refusal to participate in psychological treatment, but the issue of whether a particular refusal was reasonable in particular circumstances was not presented.  *See City of Jacksonville Fire Div. v. McDaniel*, 388 So. 2d 1336, 1337-38 (Fla. Dt. Ct. App. 1980).  Neither does that case support a general rule that refusal to participate in recommended psychological treatment is always unreasonable.  *See id.*

The remainder of P & C Dock's arguments that the ALJ should have granted its motion to compel are based on the premise that Bordeaux's refusal of treatment was unreasonable.  The ALJ's determination that Bordeaux's refusal was not unreasonable is supported by substantial evidence and consistent with applicable law.  P & C Dock has not cited any authority granting an ALJ the power to suspend payment of compensation based on a refusal of medical treatment that was not unreasonable.  Consequently, there is no basis to overturn the ALJ's denial of P & C Dock's motion to compel or the BRB's affirmance of that decision.

## D.     Attorney's Fees

After the ALJ determined that Bordeaux was permanently and totally disabled, Bordeaux filed a motion for attorney's fees.  The ALJ granted the motion finding that Bordeaux was entitled to fees pursuant to 33 U.S.C. § 928(a).  The ALJ rejected P & C Dock's argument that Bordeaux's fee application's use of "block billing" was not permitted by the applicable regulations.  On appeal the BRB overturned the ALJ's finding that §928(a) was applicable, but upheld the award of attorney's fees on the basis that Bordeaux was entitled to fees as a matter of law pursuant to 33 U.S.C. § 928(b).  The BRB upheld the ALJ's ruling that the block billing in the application was permissible.  P & C Dock appealed both rulings, arguing that Bordeaux is not entitled to attorney's fees under either subsection of § 928, and if he is, the block billing method was impermissibly vague.  This court does not need to reach the block billing issue because neither subsection of § 928 permits the award of attorney's fees in this case.

When a claimant employs an attorney to pursue his or her claim under the Longshore Act, § 928 provides for the employer to be liable for the claimant's attorney's fees in two particular situations that are described in subsections (a) and (b), respectively.  "In all other cases any claim for legal services shall not be assessed against the employer."  33 U.S.C. § 928(b).  Subsection (a) makes an employer liable for attorney's fees when the employer "declines to pay any compensation on or before the thirtieth day after receiving written notice of a claim for compensation having been filed from the deputy commissioner, on the ground that there is no liability for compensation within

---

[2]P & C Dock does allege that Bordeaux refused psychotherapy for the purpose of staying fully disabled and ensuring that he would not recover enough to return to work.  This allegation is mere speculation which the ALJ properly rejected based on the extensive medical treatment Bordeaux willingly underwent in the years following his accident.

the provisions of this chapter and the person seeking benefits shall thereafter have utilized the services of an attorney at law in the successful prosecution of his claim. . . ." *Id*. § 928(a). Subsection (b) provides that if the employer concedes that some compensation is due, but a controversy develops about the amount of additional compensation, an informal conference shall be held after which the district director shall make a written recommendation suggesting a disposition of the controversy. *Id*. § 928(b). If the employer refuses to accept the recommendation, it can tender or pay a lesser amount or no amount at all to the claimant. *Id.* If the claimant refuses any such tender and the compensation ultimately awarded is greater than the amount tendered or paid by the employer, then the employer is liable for reasonable attorney's fees. *Id*.

P & C Dock began voluntarily paying Bordeaux temporary total disability benefits within thirty days of receiving notice of his claim, but later disputed that his disability was permanent in nature. P & C Dock refused to pay permanent disability benefits until Bordeaux prevailed on this issue in the formal hearing. Before the formal hearing an informal conference was held on September 19, 2002.[3] The only evidence in the record regarding the content of the conference is a memorandum of informal conference completed by the claims review officer. According to that memorandum, Bordeaux asserted that his disability was permanent and total, but P & C Dock's position was that there was "insufficient medical information to address permanent and total disability." In the section of the form marked "Recommendation" the claims review officer explicitly stated that he was not making any recommendation at the current time because the parties were considering settlement.

   1.      33 U.S.C. § 928(a)

The ALJ held that P & C Dock was liable for attorney's fees pursuant to subsection (a). The ALJ recognized that subsection (a) does not give rise to liability for fees if an employer voluntarily pays at least some compensation. Nevertheless, the ALJ went on to assert that subsection (a) does apply whenever an employer "has controverted some aspect of the claim and claimant successfully obtains an award which employer contested." *Mobley v. Bethlehem Steel Corp*., 20 BRBS 239, 245 (1988). Even though P & C Dock paid some compensation in the form of temporary total disability payments, the ALJ concluded that subsection (a) applied because P & C Dock controverted the permanent nature of the disability. The BRB correctly concluded that this was error. The *Mobley* case quoted by the ALJ does not contain any indication that the employer had voluntarily paid compensation. *See Mobley*, 20 BRBS at 245. Therefore, that case does not support the proposition that subsection (a) is applicable when an employer controverts some aspect of the claim even if the employer has voluntarily paid a portion of the compensation sought. Nor has this court found support for such a proposition elsewhere.

The BRB pointed out that Bordeaux filed his claim on November 6, 2000 and that P & C Dock promptly began paying temporary total disability payments. Bordeaux claims that the requirements of subsection (a) are met because his request for an informal conference to determine the issue of permanency was a "claim for compensation" for purposes of subsection (a) and P & C Dock refused to pay the permanent disability benefits he sought in that claim. The only case Bordeaux cites in support of this argument is a Ninth Circuit case which observed in dicta that under such circumstances subsection (a) *might* be applicable. *Nat'l Steel & Shipbuiliding Co. v. OWCP*, 606 F.2d 875, 883 (9th Cir. 1979). However, the courts that have actually ruled on this issue have reached the opposite conclusion. *See, e.g., Virginia Int'l Terminals, Inc. v. Edwards,* 398 F.3d 313,

---

[3] At oral argument, counsel for P & C Dock stated that a total of three informal conferences were held. However, the record does not provide any reference to or information regarding any informal conferences other than the one held on September 19, 2002.

316-18 (4th Cir. 2005); *Savannah Mach. & Shipyard Co. v. OWCP*, 642 F.2d 887, 889 (5th Cir. 1981); *Boe v. Dep't of Navy/MUR*, 34 BRBS 108 (2000).

The Fourth Circuit has thoroughly examined the same argument Bordeaux presents here, and it rejected that argument for two reasons. *Edwards*, 398 F.3d at 316-17. First, the court noted that requesting an informal hearing is not a "claim for compensation" withing the meaning of subsection (a). *Id.* The statutory language refers to a claim which is filed, and "the most natural reading of the phrase 'filing a claim' refers to a formal action that initiates a legal proceeding, rather than an informal action that seeks to alter or amend a pre-existing settlement on a prior claim." *Id.* Second, the Fourth Circuit pointed out that in subsection (b), Congress set forth narrower conditions for fee awards in disputes over additional benefits. *Id.* at 317. That provision would have little, if any, effect if a claimant's request for an informal conference regarding additional compensation also constitutes a "claim for compensation" under subsection (a). *Id.* If that construction were accepted, virtually every claim for supplemental benefits would be covered by subsection (a), and the more stringent requirements in subsection (b) would be rendered superfluous. *Id.*

The reasoning in the *Edwards* case provides a sound basis for the principle other cases have consistently applied. Attorney's fees cannot be assessed under subsection (a) when an employer voluntarily pays compensation within thirty days of when the claimant files his or her initial claim for compensation. P & C Dock paid temporary total disability compensation to Bordeaux within thirty days of when he filed his claim for compensation on November 6, 2000. Therefore, the BRB's conclusion that Bordeaux was not entitled to attorney's fees under subsection (a) was proper.

> 2.      *33 U.S.C. § 928(b)*

Subsection (b) sets forth the requirements for fee liability when an employer voluntarily pays some compensation but a dispute arises concerning additional compensation. That provision states that the following circumstances must occur in order for an employer to be liable for attorney's fees: (1) an informal conference addressing the disputed additional compensation; (2) a subsequent written recommendation suggesting a disposition of the controversy; (3) the employer's rejection of the recommendation; and (4) the claimant's use of an attorney to secure an award of compensation greater than the amount the employer was willing to pay. *See* § 928(b). Bordeaux claims that all of these elements were met. An informal conference was held on September 19, 2002. Apparently the extent and degree of Bordeaux's disability were topics of the conference because the resultant memorandum described each party's position on the issue. However, although there was a written memorandum of the informal conference which suggested various possible settlement amounts, there was no recommendation of a disposition of the controversy over whether Bordeaux's disability was permanent and total. Instead the memorandum explicitly stated that no recommendation was being made because of the possibility of settlement.

The BRB acknowledged that in this case there was no written recommendation regarding the disposition of the controversy as required by the plain language of subsection (b). Nevertheless, the BRB went on to claim that "the absence of a written recommendation by the district director following the informal conference . . . does not preclude liability." The BRB went on to note that since P & C Dock voluntarily paid compensation and Bordeaux was awarded additional compensation by the ALJ, that was sufficient to make P & C Dock liable for attorney's fees under subsection (b). The Ninth Circuit precedent relied upon by the BRB does support its ruling. *See, e.g., Nat'l Steel*, 606 F.2d at 882. However, the BRB did not adequately address the circuit split that exists on this issue. The Fifth Circuit has consistently required that each of the requirements set forth in subsection (b) be met before an employer incurs liability for attorney's fees. *Pool Co. v. Cooper*, 274 F.3d 173, 186 (5th Cir. 2001); *Staftex Staffing v. OWCP*, 237 F.3d 404, 408-09 (5th Cir. 2000); *FMC Corp. v. Perez*, 128 F.3d 908, 910 (5th Cir. 1997). Two days after the BRB issued its

ruling, the Fourth Circuit weighed in on this issue, agreeing with the Fifth Circuit. *Edwards*, 398 F.3d at 318. Whether the lack of a written recommendation (or any recommendation at all) for the disposition of the controversy precludes fee liability under subsection (b) is an issue of first impression in this circuit.[4]

The Ninth Circuit has routinely held employers liable for attorney's fees under subsection (b) even when the literal terms of the statute have not been met. This approach is based on the assessment that "[t]he purpose of the statute is to authorize the assessment of legal fees against employers in cases where the existence or extent of liability is controverted and the employee-claimant succeeds in establishing liability or obtaining increased compensation in formal proceedings in which he or she is represented by counsel." *Nat'l Steel*, 606 F.2d at 882. Therefore, fee liability is imposed where these general circumstances are present even if all of the specific events listed in subsection (b) have not occurred. Fee liability has been imposed where there was a recommendation after an informal conference was held, but the recommendation was not in writing. *Id.* The Ninth Circuit has also assessed attorney's fees under subsection (b) where there was a written recommendation, but no informal conference had been held. *Matulic v. OWCP*, 154 F.3d 1052, 1060 (9th Cir. 1998); *see also Caine v. Washington Metro. Area Transit Auth.*, 19 BRBS 180 (1986).

The Fourth and Fifth Circuits have rejected the approach taken by the Ninth Circuit and have strictly enforced the specific terms of subsection (b). They have emphasized that the requirements set forth in the plain language of the statute must be met. Therefore, the lack of an informal conference and the lack of a written recommendation have been held to preclude the assessment of attorney's fees under subsection (b). *Edwards*, 398 F.3d at 318 ("The failure to hold an informal conference or issue a written recommendation is fatal to a claim for attorney's fees under the plain terms of section 928(b)."); *Pool Co.*, 274 F.3d at 186 (holding that where no informal conference took place "that fact poses an absolute bar to an award of attorney's fees under § 28(b)"); *Staftex*, 237 F.3d at 408-09; *FMC Corp.*, 128 F.3d at 910.

We adopt the approach taken by the Fourth and Fifth Circuits. "In all cases of statutory construction, the starting point is the language employed by Congress." *Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir. 1995). "Moreover, where the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Chapman v. Higbee Co.*, 319 F.3d 825, 829 (6th Cir. 2003) (en banc) (quoting *United States v. Ron Pair Enterprises*, 489 U.S. 235, 241(1989)). The language of subsection (b) plainly states that in order for fees to be assessed under its terms there must be a written recommendation containing a suggested disposition of the controversy.[5] The Ninth Circuit avoids this result by referring to the legislative history of subsection

---

[4] Since the Benefits Review Board is not a policymaking agency, its interpretation of the Longshore Act is not entitled to any special deference from the court. *Potomac Elec. Power Co. v. OWCP*, 449 U.S. 268, 279 n.18 (1980).

[5] The complete text of subsection (b) reads as follows:

If the employer or carrier pays or tenders payment of compensation without an award pursuant to section 914(a) and (b) of this title, and thereafter a controversy develops over the amount of additional compensation, if any, to which the employee may be entitled, the deputy commissioner or Board shall set the matter for an informal conference and following such conference the deputy commissioner or Board shall recommend in writing a disposition of the controversy. If the employer or carrier refuse to accept such written recommendation, within fourteen days after its receipt by them, they shall pay or tender to the employee in writing the additional compensation, if any, to which they believe the employee is entitled. If the employee refuses to accept such payment or tender of compensation, and thereafter utilizes the services of an attorney at law, and if the compensation thereafter awarded is greater than the amount paid or tendered by the employer or carrier, a reasonable attorney's fee based

(b). *See Nat'l Steel*, 606 F.2d at 882. There are two fundamental problems with this approach. First, resorting to legislative history is only appropriate when the statutory language at issue is not clear. *In re Comshare Inc. Sec. Litig*., 183 F.3d 542, 549 (6th Cir. 1999) (citing *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc*., 447 U.S. 102, 108 (1980)). Second, the legislative history cited by the Ninth Circuit does not support the proposition for which it is cited. The Ninth Circuit asserts that according to the legislative history "[t]he purpose of the statute is to authorize the assessment of legal fees against employers in cases where the existence or extent of liability is controverted and the employee-claimant succeeds in establishing liability or obtaining increased compensation in formal proceedings in which he or she is represented by counsel." *Nat'l Steel*, 606 F.2d at 882. However, the document cited actually states that subsection (b) deals with "cases where payment of compensation is tendered and an unresolved controversy develops about the amount of additional compensation, *despite the written recommendation of the deputy commissioner*." H.R. Rep. No. 92-1441 (1972), *reprinted in* 1972 U.S.S.C.A.N. 4698, 4717 (emphasis added). Since there is little, if any, support for the Ninth Circuit's position, even in the legislative history, we reject the Ninth Circuit's approach and hold that Bordeaux is not entitled to attorney's fees pursuant to subsection (b) because there was no written recommendation regarding the disposition of the controversy.

### III. CONCLUSION

The ALJ's determination that Bordeaux's cognitive disability was permanent was based on substantial evidence and consistent with applicable law. Therefore, it is beyond the purview of this court to overturn that decision. The ALJ's denial of the motion to compel based on his conclusion that Bordeaux's refusal to undergo the recommended additional therapy was not unreasonable is similarly well-grounded. However, the conclusion that subsection (a) applies in this case is contrary to applicable law as pointed out by the BRB. Finally, the BRB's determination that subsection (b) applies was error. Accordingly, the fee award is vacated, and the case is remanded for further proceedings to fix the fee payable by Bordeaux, pursuant to 33 U.S.C. § 928(c). For the forgoing reasons, the order directing P & C Dock to pay Bordeaux's attorney's fees and expenses is VACATED and the remainder of the BRB's decision is AFFIRMED.

---

solely upon the difference between the amount awarded and the amount tendered or paid shall be awarded in addition to the amount of compensation. The foregoing sentence shall not apply if the controversy relates to degree or length of disability, and if the employer or carrier offers to submit the case for evaluation by physicians employed or selected by the Secretary, as authorized in section 907(e) of this title and offers to tender an amount of compensation based upon the degree or length of disability found by the independent medical report at such time as an evaluation of disability can be made. If the claimant is successful in review proceedings before the Board or court in any such case an award may be made in favor of the claimant and against the employer or carrier for a reasonable attorney's fee for claimant's counsel in accord with the above provisions. In all other cases any claim for legal services shall not be assessed against the employer or carrier.

33 U.S.C. 928(b).

---

### CONCURRING IN PART, DISSENTING IN PART

---

KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part. Although I agree with the majority's conclusion upholding the award of permanent total disability benefits to Thomas Bordeaux ("Bordeaux") and the denial of the motion to compel, I write to express my disagreement with the majority's reversal of the attorney-fee award. Both the Administrative Law Judge ("ALJ") and the Benefits Review Board ("BRB") concluded that Bordeaux was entitled to recover attorney fees, albeit on different grounds. Although the statutory scheme's complexity may hinder identification of the proper statutory basis for a fee award, one thing is conclusive: Bordeaux is entitled to attorney fees. Denying fees to Bordeaux based on rigid formalities that are not expressly mandated by the statute is contrary to two of the primary concerns underlying the Longshore and Harbor Workers' Compensation Act ("the Act"), 33 U.S.C. §§ 901-950: the availability of quick recovery for valid workplace-injury claims without resort to the courts, and when this fails, claimants' full recovery of statutory benefits without reduction by the cost of legal services. *See, e.g.*, *Newport News Shipbldg. & Dry Dock Co. v. Brown*, 376 F.3d 245, 250 (4th Cir. 2004); *Hunt v. Dir., Office of Workers' Comp. Programs*, 999 F.2d 419, 424 (9th Cir. 1993); *Oilfield Safety & Mach. Specialties, Inc. v. Harman Unlimited, Inc.*, 625 F.2d 1248, 1257 (5th Cir. 1980); *Universal Terminal & Stevedoring Corp. v. Parker*, 587 F.2d 608, 611 (3d Cir. 1978). Because it is well established that the Act "must be liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results," *Dir., Office of Workers' Comp. Programs v. Perini N. River Assocs.*, 459 U.S. 297, 315-16 (1983) (internal quotation marks omitted) (collecting cases), I respectfully dissent from the majority's reversal of the fee award.

### I. 33 U.S.C. § 928(a)

#### A. Basic Contours

Title 33 U.S.C. § 928(a) awards attorney fees when "the employer or carrier declines to pay any compensation on or before the thirtieth day after receiving written notice of a claim for compensation having been filed from the deputy commissioner, on the ground that there is no liability for compensation within the provisions of this chapter, and the person seeking benefits shall thereafter have utilized the services of an attorney at law in the successful prosecution of his claim." 33 U.S.C. § 928(a). The majority interprets this provision to be inapplicable when the employer pays some amount of compensation within thirty days after receiving notice of the claim. The majority, however, provides no reasoning and cites no authority to support this conclusion.[1] This is a question of first impression in our court, and there is a split among our sister circuits on this issue. *Compare FMC Corp. v. Perez*, 128 F.3d 908, 910 (5th Cir. 1997) (considering a claim under § 928(a) when the employer paid one kind of disability benefit but refused to pay another kind), *Nat'l Steel & Shipbldg. Co. v. U.S. Dep't of Labor, Office of Workers' Comp. Programs*, 606 F.2d 875, 883 (9th Cir. 1979) (suggesting that partial refusal could be a basis for recovery under § 928(a) when the employer paid temporary total disability benefits but refused to pay permanent partial disability payments), *and Presley v. Tinsley Maint. Serv.*, 529 F.2d 433, 437 (5th Cir. 1976)

---

[1]The legislative history leaves the question open. It should be noted, however, that the House Report regarding § 928(a) omits "any" from its statement of the employer's refusal to pay compensation. H.R. Rep. No. 92-1441, 92d Cong., 2d Sess. 3, reprinted in 1972 U.S. Code Congressional and Administrative News 4698, 4717 ("A new provision is added directing an award of a reasonable attorney fee against an employer or carrier to be paid directly to the attorney in a lump sum, where such employer or carrier has declined to pay compensation within 30 days after notice that a claim has been filed on the ground of nonliability, and such claim is successful.").

(considering a claim under § 928(a) when the employer paid permanent total disability benefits but not permanent partial disability benefits, but denying the claim because additional permanent disability benefits were not awarded), *with Va. Int'l Terminals, Inc., v. Edwards*, 398 F.3d 313, 316-18 (4th Cir. 2005) (suggesting that § 928(a) is inapplicable when employer paid some benefits), *and Savannah Mach. & Shipyard Co. v. Dir., Office of Workers' Comp. Programs*, 642 F.2d 887, 889 (5th Cir. 1981) (holding that the employer's partial tender of compensation renders § 928(a) inapplicable).

## B. Employer's Refusal to Pay One Type of Benefit as "Declin[ing] to [P]ay [A]ny [C]ompensation"

Two theories support Bordeaux's claim for attorney fees under § 928(a). The first theory, as explained by the Fifth Circuit, holds that when, as here, the employer voluntarily paid one type of benefit, temporary total disability, but contested another type of benefit, permanent total disability, "this may be the equivalent of not paying 'any compensation' within the meaning of Section 28(a)." *FMC Corp.*, 128 F.3d at 910; *see also Nat'l Steel & Shipbldg. Co.*, 606 F.2d at 883 (9th Cir.) (stating that when the employee sought "compensation different in kind as well as amount from that he had received previously, and the very existence of liability for that compensation was disputed by [the employer,]" attorney fees might be appropriate under § 928(a)). The Fifth Circuit in *FMC* found that an award was not proper in the case before it, however, because the amount of benefits paid per month for either temporary or permanent total disability benefits was the same.

The result in *FMC* is not dictated here. Bordeaux was awarded $425.47 per month for permanent total disability benefits, and his employer, Pittsburgh & Conneaut Dock ("P & C Dock"), had been paying him $425.01 per month for temporary disability benefits. This difference in payment is not a mere matter of forty-six cents; rather, it points to a qualitative difference in the benefits actually paid to Bordeaux and the benefits to which he was legally entitled and that he was ultimately awarded. Unlike temporary disability benefits, permanent disability benefits are increased each year on October 1 by an annual adjustment under 33 U.S.C. § 910(f). Additionally, temporary disability benefits can be ceased at the employer's whim, whereas permanent benefits are required to be paid on an ongoing basis. These two substantial differences in the type of benefits that P & C Dock voluntarily paid and that P & C Dock refused to pay support an award of attorney fees pursuant to § 928(a) because P & C Dock's complete refusal to pay permanent disability benefits constitutes a failure "to pay any compensation" under § 928(a). *See FMC Corp.*, 128 F.3d at 910; *Nat'l Steel & Shipbldg. Co.*, 606 F.2d at 883.

## C. A Request for an Informal Conference as a Claim for Compensation

The second theory supporting Bordeaux's claim under § 928(a) is that even after the employee has applied for and received temporary disability benefits, the employee's later claim for permanent disability benefits through an informal conference of which the employer receives written notice constitutes "filing a claim" under § 928(a). Thus the employer's refusal to pay this claim permits a fee award under § 928(a). The majority cites a recent Fourth Circuit decision, *Virginia International Terminals*, 398 F.3d at 316-17, to support its rejection of this theory.[2] However, the reasoning of that case is flawed. In *Virginia International Terminals*, the Fourth Circuit held that an "informal" letter requesting a conference on the issue of benefits for the three days in between when the employee was injured and when the employer began paying benefits could not be

---

[2] The majority wrongly cites *Savannah Machine & Shipyard Company*, 642 F.2d at 889, as holding that a request for an informal conference is not a claim for compensation. In that case, the employee did not request an informal conference. Rather, the employer requested a hearing. The case only held that § 928(a) does not apply because the employer had tendered partial compensation.

considered "filing a claim" under § 928(a).  *Id.* at 315.  The Fourth Circuit explained that the "most natural reading of the phrase 'filing a claim' refers to a formal action that initiates a legal proceeding, rather than an informal action that seeks to alter or amend a pre-existing settlement on a prior claim."  *Id.* at 316.  However, both the regulations and case law explain that the initiation of a claim requires little in the way of formality, thus undermining the Fourth Circuit's contention that "filing a claim" refers to "a formal action."  *See* 20 C.F.R. § 702.221(a) (requiring only that a claim be in writing and filed within one year of the injury[3]); *Fireman's Fund Ins. Co. v. Bergeron*, 493 F.2d 545, 546-47 (5th Cir. 1974) (explaining that "[n]o particular form of claim need be used" and that "[t]he requirement of a claim is met if a writing, even though an informal one, of the injured employee or his attorney discloses an intention to assert a right to compensation" (quoting *Employers Liab. Assurance Corp. v. Donovan*, 279 F.2d 76, 78 (5th Cir. 1960)).  In fact, one of the primary goals of the Act is to avoid legal formalities and to address conflicts informally.  *See, e.g.*, *Universal Terminal & Stevedoring Corp.*, 587 F.2d at 611.  The majority's denial of a fee award on this basis undermines the policy of "not encouraging premature claims of permanent disability."  *J.M. Martinac Shipbldg. v. Dir., Office of Workers Comp. Programs*, 900 F.2d 180, 184 (9th Cir. 1990).  Given that P & C Dock received written notice of the informal conference, Bordeaux's request for permanent total disability benefits constituted "filing a claim" under § 928(a).

The Fourth Circuit in *Virginia International Terminals* also reasoned that § 928(b) is the exclusive avenue by which to recover attorney fees in cases in which the employee seeks "additional" or "supplemental" benefits because otherwise § 928(b) and its "more stringent conditions . . . would be rendered superfluous."[4]  398 F.3d at 317.  However, the Ninth Circuit has acknowledged that sections 928(a) and 928(b) are not mutually exclusive and may overlap.  *Nat'l Steel & Shipbldg. Co.*, 606 F.2d at 883; *see also Barker v. U.S. Dep't of Labor*, 138 F.3d 431, 438 n.6 (1st Cir. 1998).  In addition, this case is unlike *Virginia International Terminals* in that it does not involve an attempt "to alter or amend a pre-existing settlement on a prior claim."  *Va. Int'l Terminals*, 398 F.3d at 316.  In this case, there was no preexisting settlement regarding permanent total disability benefits.  From the record before us, it appears that Bordeaux originally filed only for temporary total disability benefits because he did not know he would be permanently disabled at the time he filed his initial claim.  Bordeaux's request for an informal conference, of which the employer was given written notice, came about when he became aware of a new type of injury — permanent total disability — and a new type of benefit for which he qualified — permanent total disability — based on information that he could not have had when he filed his initial claim.  The employer did not controvert his initial claim for temporary disability benefits, but did controvert, *in its entirety*, Bordeaux's later claim for permanent disability benefits.  Therefore, although the later claim was based on the same work-related injury, this was not simply a claim for supplemental benefits.  Allowing an award under § 928(a) for a claim like Bordeaux's, in which a different kind of benefit is requested based on a newly recognized kind of injury, does not open the floodgates to allow any supplemental claim to proceed under § 928(a).

---

[3]This one-year time limit does not bar Bordeaux's claim because he requested the informal conference within one year of realizing that his injury was permanent.  *See* 33 U.S.C. § 913(a) (stating that "[t]he time for filing a claim shall not begin to run until the employee or beneficiary is aware, or by the exercise of reasonable diligence should have been aware, of the relationship between the injury or death and the employment"); *J.M. Martinac Shipbldg. v. Dir., Office of Workers Comp. Programs*, 900 F.2d 180, 183-84 (9th Cir. 1990) (tolling one-year statute of limitations until employee recognized that injury was permanent because "an injured employee is not injured for purposes of the statute of limitations until he [becomes] aware of the full character, extent, and impact of the harm done to him" (internal quotation marks omitted)).

[4]Given that, as I conclude below, the formalities mentioned in § 928(b) are not prerequisites to an award under that provision, the Fourth Circuit's argument on this ground carries little weight.

On these grounds, I find the Fourth Circuit's decision to be unpersuasive, and instead would consider Bordeaux's request for an informal conference to have been the "filing [of] a claim" under § 928(a). P & C Dock's refusal to pay this claim warrants an attorney-fee award under § 928(a).

## II. 33 U.S.C. § 928(b)

### A. Statutory Text

Section 928(b) states that if an employer pays benefits to an employee without an award,

> and thereafter a controversy develops over the amount of additional compensation, if any, to which the employee may be entitled, the deputy commissioner or Board shall set the matter for an informal conference and following such conference the deputy commissioner or Board shall recommend in writing a disposition of the controversy. If the employer or carrier refuse to accept such written recommendation, within fourteen days after its receipt by them, they shall pay or tender to the employee in writing the additional compensation, if any, to which they believe the employee is entitled.

33 U.S.C. § 928(b). If the employee then does not accept the employer's offer of compensation, and thereafter relies on an attorney to attain compensation greater than what the employer offered, an attorney-fee award is appropriate. *Id.*

### B. § 928(b) Formalities as Preconditions to Recovery

The majority concludes that to secure an award pursuant to § 928(b), four conditions must be met: an informal conference, a written recommendation, the employer's rejection of the recommendation, and the claimant's use of an attorney to recover an award in excess of what the employer would have paid. The majority rejects the BRB's reliance on the Ninth Circuit's view that such terms included within the text are not preconditions to an award.[5] *See Everitt v. Dir., Office of Workers Comp. Programs*, 107 F. App'x 750, 753 n.4 (9th Cir. 2004) (rejecting the argument that formalities are required to recover an award under § 928(b)); *Matulic v. Dir., Office of Workers Comp. Programs*, 154 F.3d 1052, 1060-61 (9th Cir. 1998) (upholding a fee award under § 928(b) despite the fact that no informal conference had been held); *Nat'l Steel & Shipbldg. Co.*, 606 F.2d at 882 (upholding a fee award under § 928(b) when no written recommendation was issued). While I agree with the majority that the Ninth Circuit's reliance on the legislative history for its position is misplaced because the legislative history is inconclusive on this issue, I disagree with the majority's conclusion that the plain language of the statute bars Bordeaux from a fee award under § 928(b).

The statute mentions these formalities, but it does not state that they are preconditions to an award under § 928(b). Therefore, the plain language of the statute does not address the situation, when, as here, the formalities were lacking through no fault of the claimant, but rather as a result of the agency's failure to follow its duties. Bordeaux requested and participated in the informal conference. The memorandum memorializing the events of the September 19, 2002 informal

---

[5] In noting that our sister circuits are split on this issue, the majority erroneously asserts that the Fifth Circuit has rejected the Ninth Circuit's position. The Fifth Circuit has issued a number of decisions that do not consider these formalities to be prerequisites to a fee award. *See James Flanagan Stevedores, Inc. v. Gallagher*, 219 F.3d 426, 435-36 (5th Cir. 2000) (upholding a fee award under § 928(b) without a written recommendation and placing the burden on the employer to show the substance of the written recommendation); *Boland Marine & Mfg. Co. v. Rihner*, 41 F.3d 997, 1006-07 (5th Cir. 1995) (upholding a fee award under § 928(b) without discussing whether formalities had been met).

conference states the "issues" as: "[d]iscuss settlement" and "[e]xtent of permanent disability." Joint Appendix ("J.A.") at 241 (Memo. of Informal Conference). Under the "recommendation" section, the claims review officer wrote "[a]s a settlement cures all ills, issues and disputes, no recommendation will be made at the current time," and instead provided "'ballpark' settlement amounts . . . as a starting point for negotiations." *Id.* Section 928(b) states that "following [the informal] conference the deputy commissioner or Board *shall recommend in writing a disposition of the controversy.*"[6] 33 U.S.C. § 928(b) (emphasis added). Here, the claims officer failed to follow his statutory obligation of making a recommendation disposing of the controversy and instead directly contravened the statute by stating that he was making "no recommendation." J.A. at 241 (Memo. of Informal Conference). It is no fault of Bordeaux that the claims review officer did not make a recommendation on the disputed issue.[7] The employer should not secure a windfall because the claims officer shirked his statutory duty, particularly when nothing in the statute mandates that we enforce such preconditions to recovery. P & C Dock's failure to raise the issue of the lack of a written recommendation until it was contesting the fee award "thwarted any possibility of achieving a timely compliance with the statute and does not constitute ground for setting aside the fee award." *See Nat'l Steel & Shipbldg. Co.*, 606 F.2d at 882.

When the language of a statute leads to an "unreasonable" result "plainly at variance with the policy of the legislation as a whole," we are to "follow[] that purpose rather than the literal words." *United States v. Am. Trucking Ass'ns, Inc.*, 310 U.S. 534, 543-44 & n.21 (1940) (collecting cases). Because denying Bordeaux a fee award based on the language of § 928(b) would be at odds with the policies underlying the Act, Bordeaux should recover under § 928(b).

### III. BLOCK BILLING

P & C Dock's objection to the format of Bordeaux's applications for attorney fees to the ALJ and the BRB is without merit. Sections 928(a) and 928(b) merely state that any attorney fee awarded must be "reasonable."[8] 33 U.S.C. § 928(a), (b). P & C Dock has cited no authority to support its argument that the use of block billing is contrary to the award of a reasonable attorney fee under § 928, and, in fact, our sister circuits have rejected block-billing objections to fee awards in a number of contexts. *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006) (Title VII); *Trulock v. Hotel Victorville*, 92 F. App'x 433, 434 (9th Cir. 2004) (Americans with Disabilities Act) (citing *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000)); *Cadena*

---

[6] The regulations further require that "[w]hen it becomes apparent during the course of the informal conference that agreement on all issues cannot be reached, the district director shall bring the conference to a close, shall evaluate all evidence available to him or her, and after such evaluation shall prepare a memorandum of conference setting forth all outstanding issues, such facts or allegations as appear material and *his or her recommendations and rationale for resolution of such issues.*" 20 C.F.R. § 702.316 (emphasis added).

[7] This case is distinguishable thus from those cases cited by the majority that denied an award for lack of an informal conference, *see Va. Int'l Terminals, Inc.*, 398 F.3d at 318; *Pool Co. & Carrier v. Signal Mut. Indem. Ass'n*, 274 F.3d 173, 186 (5th Cir. 2001); *FMC Corp.*, 128 F.3d at 909, because the employees in those cases likely had some control over requesting the conference. In this vein, *Staftex Staffing v. Director, Office of Worker's Compensation Programs*, 237 F.3d 404, 409 (5th Cir. 2000), is particularly inapposite because there the court held that attorney fees could not be awarded under § 928(b) because the *employee* failed to raise an issue at an informal conference. By contrast, the lack of a written recommendation was in no way a result of any deficiency on the part of Bordeaux.

[8] The regulations require that fee applications submitted to the ALJ "shall be supported by a complete statement of the extent and character of the necessary work done . . . and the hours devoted by each such person to each category of work." 20 C.F.R. § 702.132(a). The regulations further mandate that fee applications submitted to the BRB shall contain "[a] complete statement of the extent and character of the necessary work done" and "[t]he number of hours, in 1/4 hour increments, devoted by each person who performed services on behalf of the claimant and the dates on which such services were performed in each category of work," 20 C.F.R. § 802.203(d)(1), (3).

*v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000) (Title VII). In a case awarding fees under 42 U.S.C. § 1988, which is also governed by a reasonableness standard, the Supreme Court held that "[p]laintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended," but rather "should identify the general subject matter of his time expenditures." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983). Therefore, counsel's detailed descriptions of his activities, although not further described by time spent on each individual activity, is sufficient to assess whether the cost of the service is reasonably related to the quality or extent of service, as required by the regulations.[9] *See* 20 C.F.R. §§ 702.132(a), 802.203(e).

## IV. CONCLUSION

Because the text of § 928(a) and § 928(b) and the policies underlying the Act support a fee award, I would uphold the award under either § 928(a) or § 928(b). Accordingly, I respectfully dissent.

---

[9]The ALJ considered a number of P & C Dock's objections to individual entries and discarded those entries that lacked the requisite specificity.