10-3186-ag
Staubley v. Electric Boat Corporation

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 1st day of September, two thousand eleven.

Present:
> JON O. NEWMAN,
> PETER W. HALL,
> > *Circuit Judges*,
> LORETTA A. PRESKA,
> > *Chief District Judge.**

_____

CLYDE STAUBLEY,

> *Petitioner*,

> v.                                                                No. 10-3186-ag

ELECTRIC BOAT CORPORATION, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,
DIRECTOR,

> *Respondents*.

_____

――――――――――――――――――

\* The Honorable Loretta A. Preska, Chief Judge of the United States Court for the Southern District of New York, sitting by designation.

FOR PETITIONER:          Stephen C. Embry, Embry and Neusner, Groton, CT.

FOR RESPONDENTS:     Mark P. McKenney, McKenney, Quigley, Izzo & Clarkin, LLP,
                                      Providence, RI.

_____

Petition for review of a decision of the Benefits Review Board (the "Board") regarding

an award of benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"),

33 U.S.C. §§ 901-950. **ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**,

**ADJUDGED**, and **DECREED** that the petition is **DENIED**.

Petitioner Clyde Staubley seeks review of the Board's decision affirming the

Administrative Law Judge's award of benefits under the LHWCA for a ten percent permanent

impairment of his lungs commencing on January 31, 2008.[1]  He argues that the Administrative

Law Judge ("ALJ") erred by not taking judicial notice of the American Medical Association's

Guides to the Evaluation of Permanent Impairment (the "Guides") in evaluating his claim for

benefits and by finding that his impairment became permanent in January 2008 rather than at the

time of his retirement.  We assume the parties' familiarity with the underlying facts, the

procedural history of the case, and the issues on appeal.

Under the LHWCA, an ALJ's findings of fact are binding on the Board if supported by

substantial evidence in the record as a whole, *see* 33 U.S.C. § 921(b)(3), and we review the

Board's decision for adherence to that standard, *see Rasmussen v. Gen. Dynamics Corp., Elec.*

*Boat Div.*, 993 F.2d 1014, 1015-16 (2d Cir. 1993); *see also Pietrunti v. Dir., Office of Workers'*

_____

[1] Staubley also petitions for review of the Board's order denying his motion for
reconsideration.  However, because he does not separately address that order in his brief on
appeal, we deem any challenge to that decision forfeited.  *See Norton v. Sam's Club*, 145 F.3d
114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and
normally will not be addressed on appeal.").

*Comp. Programs*, 119 F.3d 1035, 1040 (2d Cir. 1997) ("If the decision of the ALJ is supported by substantial evidence, is not irrational, and is in accordance with the law, the decision must be affirmed."). Substantial evidence is "evidence that a reasonable mind might accept as adequate to support a factual conclusion." *New Haven Terminal Corp. v. Lake*, 337 F.3d 261, 265 (2d Cir. 2003). We review *de novo* any errors of law. *See id.*

We agree with the Board that the ALJ most likely erred by not taking judicial notice of the Guides. Because the LHWCA requires that a claimant's permanent impairment be determined "under the [G]uides," 33 U.S.C. § 902(10), it stands to reason that an ALJ can rely on the Guides without the parties specifically introducing them into the record. That said, we also agree with the Board that under the circumstances of this case, the ALJ's error was harmless.

Staubley identifies two consequences of this error which he alleges warrant reversal. First, he asserts that had the ALJ consulted the Guides, she would have found they were consistent with Dr. Martin Cherniack's determination that Staubley suffered from a five-percent "permanent defect" in 1992. Thus, he argues, she would not have refused to credit Cherniack's determination because he did not rely on the Guides in rendering this opinion. That Cherniack failed to apply the Guides was not the only reason, however, that the ALJ did not credit his assessment of a five-percent defect. She found, in addition, that Cherniack's evaluation lacked evidentiary support because Cherniack relied exclusively on the fact that Staubley's lungs showed evidence of pleural plaques, which the ALJ noted did not establish a pulmonary impairment. This finding is well supported. Drs. Stephen Matarese, Michael Teiger, and Milo Pulde all confirmed that while pleural plaques do typically indicate past exposure to asbestos,

they do not evidence impairment. Indeed, Matarese—Staubley's treating physician and expert witness—testified explicitly that Staubley's pleural plaques were "benign." Therefore, because pleural plaques are not evidence of impairment and because Cherniack relied solely on those plaques to support his finding of a five-percent defect, the ALJ's decision not to credit Cherniack's medical opinion is supported by substantial evidence, regardless of her failure to take judicial notice of the Guides.[2]

Second, Staubley argues that if the ALJ had taken judicial notice of the Guides, she would have discovered that the variability shown in Matarese's and Teiger's predicted values for Staubley's diffusion capacity was based on the physicians' use of different standards to calculate those values. He maintains that had the ALJ applied the Guides to the raw data from his pulmonary function tests, she would have realized that his diffusion capacity steadily diminished over time. We reject this argument. Our review of the ALJ's decision confirms that she was well aware that the predicted values recorded by Matarese and Teiger varied because the physicians used different standards. And to account for this variation, the ALJ specifically

---

[2] Staubley also appears to argue that the ALJ should have independently determined under the Guides whether the raw data from Cherniack's 1991 pulmonary function test showed that Staubley's diffusion capacity was abnormal. We reject this argument. Although an ALJ should reach a reasoned judgment based on the evidence presented and need not defer to any particular medical opinion or theory, *see McLaughlin v. Sec'y of Health, Ed. and Welfare*, 612 F.2d 701, 705 (2d Cir. 1980); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979), the ALJ "cannot arbitrarily substitute h[er] own judgment for competent medical evidence," *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983). Here, Cherniack, an experienced pulmonary specialist, concluded that based on his evaluation of the 1991 pulmonary function test results, Staubley's diffusion capacity was normal. Staubley would have the ALJ contradict this finding and render an independent medical opinion based on Cherniack's raw recorded data. This is not permitted. *See id.* ("While an administrative judge is free to resolve issues of credibility as to lay testimony or to choose between properly submitted opinions, he is not free to set his own expertise against that of a physician who testified before him.").

limited her findings to Matarese's pulmonary function test results, since Matarese used the same predicted value standard in all of his tests.

Additionally, we conclude that the ALJ's finding that Staubley's impairment became permanent in January 2008 is supported by substantial evidence. Voluntary retirees like Staubley are entitled to disability benefits under the LHWCA for any "permanent impairment" as defined under the Guides. *See* 33 U.S.C. §§ 902(10), 908(c)(23), 910(d)(1)-(2); *Rajotte v. Gen. Dynamics Corp.*, 18 BRBS 85 (1986) ("Under the Act . . . , when a[n] employee voluntarily retires and his disease becomes manifest subsequent to his retirement, recovery is limited to permanent partial disability based on the extent of claimant's impairment [under the Guides]."). "The onset date of such disability award[] . . . [is] the date when claimant's impairment became permanent." *Barlow v. W. Asbestos Co. & State Comp. Fund.*, 20 BRBS 179, 182-83 (1988). Permanency can be shown in two ways: (1) when the claimant reaches "maximum medical improvement" as demonstrated by the medical evidence; or (2) when the claimant's disability "has continued for a lengthy period, and it appears to be of lasting or indefinite duration, as distinguished from one in which recovery merely awaits a normal healing period." *Eckley v. Fibrex & Shipping Co.*, 21 BRBS 120, 122-23 (1988) (quoting *Watson v. Gulf Stevedores Corp.*, 400 F.2d 649, 654 (5th Cir. 1968)); *accord Pittsburgh & Conneaut Dock Co. v. Dir., Office of Workers' Comp. Programs,* 473 F.3d 253, 259 (6th Cir. 2007) (discussing these two tests).

Here, the ALJ found that Staubley reached maximum medical improvement in January 2008 and that his impairment was permanent at that time. This finding is supported by substantial evidence. Matarese testified at his deposition in May 2008 that Staubley was "at maximum medical improvement right now," a finding consistent with Staubley's pulmonary

function test results.  Matarese noted also that even as of January 2008, Staubley remained essentially "asymptomatic," a diagnosis confirmed by Teiger and Pulde.  Staubley does not challenge these facts.  Instead, he relies on Cherniack's 1991 evaluation which showed that Staubley's lungs contained pleural plaques and asserts that this confirms that he had a permanent impairment at the time he retired.  We disagree.  As already discussed, evidence of pleural plaques does not demonstrate impairment.  Substantial evidence thus supports the ALJ's permanency finding.

We have considered all of Staubley's remaining arguments and find them to be without merit.  The petition for review is thus **DENIED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK