UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NEWPORT NEWS SHIPBUILDING AND
DRY DOCK COMPANY,
<u>Petitioner,</u>

v.

LYNETTE RILEY; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR,
<u>Respondents.</u>

No. 00-1591

On Petition for Review of an Order
of the Benefits Review Board.
(99-148)

Argued: April 3, 2001

Decided: May 29, 2001

Before WILKINSON, Chief Judge, WILLIAMS, Circuit Judge,
and Frederic N. SMALKIN, United States District Judge
for the District of Maryland, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Jonathan Henry Walker, MASON, COWARDIN &
MASON, P.C., Newport News, Virginia, for Petitioner. Robert Elliott
Walsh, RUTTER, WALSH, MILLS & RUTTER, L.L.P., Norfolk,

Virginia; Mark A. Reinhalter, Senior Appellate Attorney, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents. **ON BRIEF:** Christopher R. Hedrick, MASON, COWARDIN & MASON, P.C., Newport News, Virginia, for Petitioner. Henry L. Solano, Solicitor of Labor, Carol A. De Deo, Associate Solicitor for Employee Benefits, Kristin M. Dadey, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Newport News Shipbuilding and Dry Dock Company (Newport News) appeals from a decision of the Benefits Review Board award- ing disability benefits under the Longshore and Harbor Workers Compensation Act, 33 U.S.C.A. §§ 901 <u>et seq.</u>, to Lynette Riley. Because Riley made out a prima facie case of disability and Newport News's evidence of a performance-based reason for her discharge is nonresponsive to its burden of showing suitable alternative employ- ment, we affirm.

I.

A.

Riley began working for Newport News on March 5, 1995, as part of an apprentice program. The program included a 180-day probation period that required participants to undergo training and to attain passing grades in all subjects.* Riley's training consisted of course

_____
*Failure to complete the probationary period can result in the appren- tice's discharge, at the discretion of the supervisor. After the probation-

2

work and hands-on instruction. Her first assignment was in the Newport News pipefitters' department. Initially, Riley was working in the copper shop, learning how to assemble pipe. In May of 1995, she was sent to welding school, where she experienced pain in her right wrist after two weeks at the school. At the benefits hearing before an Administrative Law Judge (ALJ), she confirmed that her wrist "constantly hurt" during this time and that as a result she would soak it periodically. (J.A. at 29.) Riley testified that the pain in her right hand affected her ability to perform well in the welding school.

Riley received a failing grade in May 1995 while in the welding school. When her supervisor spoke to her regarding this failing grade, Riley did not mention the pain in her right hand as a cause of her poor performance, and she did not go to the Newport News medical clinic to seek treatment for her hand pain. Because Riley was still in her probationary period, her supervisor used his discretion to allow her to remain in the apprentice program following this failing grade. Riley continued in the apprentice program and received passing grades in June, July, and August of 1995.

In September 1995, Riley ended the craft section of the apprentice program and began her course work. All of her grades through April 1996 were passing, but twice -- in October 1995 and May 1996 -- her supervisor warned her that she could not continue to pass unless her performance improved. Riley's supervisor through January 1996, Carlton, testified that Riley never told him of her wrist problems and that he attributed her low grades to difficulty understanding and performing the work.

Riley was then transferred to the U.S.S. Truman, where she worked running pipes overhead in an elevator shaft. In May 1996, she received a failing grade of 68.5 for her shop work. She verified that

_____

ary period, an apprentice must continue to maintain a monthly passing grade to remain in the apprentice program. A post-probationary apprentice who receives a failing monthly grade on job performance is placed on shop probation for a four-month period beginning on the second month following the failing grade. The apprentice is advised of the failing grade and is counseled.

she initialed the failing grade and that this was her second failing grade during her employment with Newport News. Following this grade, her supervisor, Darden, asked her if there was anything he needed to know regarding her performance; she said there was no problem. Darden informed Riley that she was not completing a sufficient amount of work; she replied that she did not know why she did not do more. She confirmed during the hearing before the ALJ that she had no wrist problems in May 1996. After Riley's failing grade in May 1996, Newport News placed her on probation. She was given a grace period of one month to get her performance back up to par and then a mandatory probationary period during which a single failing grade would result in automatic discharge from the program. Riley earned the minimum passing grade of 70 in June 1996 and a 71 in July. After her July grade, Darden told Riley that her performance was still not satisfactory.

In August of 1996, Riley was working with a hydraulic pipe in an elevator shaft of the Truman and was using grinders, levels, scribes, rulers, and sandpaper. Darden evaluated her performance for the first two weeks of August as unsatisfactory and warned her that she would fail unless she improved her work. He again asked if there was anything he needed to know regarding her performance, and she emphatically denied needing any help. Darden testified that Riley never offered an explanation for her poor grades, and he believed she was physically capable of performing her work.

On August 26, 1996, Riley began having problems with swelling, pain, and numbness in her right hand. She stated that she did not start having wrist problems before August 26, and that any problems with her grades before the injury had nothing to do with the injury. On August 27, 1996, Riley went to the Newport News company clinic to report the development of hand problems due to work performed on August 26, 1996. The clinic gave her work restrictions, which stated that she was to avoid "heavy gripping, repetitive motion at [the] wrist, use of vibratory or impact tools on [the] right [hand]," and further that she was to be allowed four minutes twice per shift for wrist exercises and cool soaks. (J.A. at 240.) These restrictions ran until September 10, 1996. (Id.)

Riley received a failing grade for the month of August and was terminated on September 24, 1996. Because she was using her left hand

4

to perform work after August 26, her work slowed down. Her supervisor testified that he was aware of her restrictions and assigned three co-workers to help her, although there is some dispute in the evidence as to whether these co-workers actually provided any help. Darden asserted that Riley's work during the last two weeks of August was within her restrictions and that her grade was calculated in a manner that compensated for her restrictions so that she was not penalized. Darden testified that Riley did not say that she could not perform the work following her injury. Riley testified that she was working within her restrictions. Darden, however, testified that virtually every aspect of her job involved activities that fell outside her restrictions, although he later indicated that this would have been the case only if Riley had told him that she believed she was working outside her restrictions.

Riley filed a grievance with her union after being informed of her termination, claiming that her release was in violation of the union contract; this grievance did not mention her injury. Raymond Stallings, personnel manager for Riley's department, testified that he could have found her light-duty work to accommodate her injury, that he was not asked to do so, that individuals who fail the apprentice program usually are not placed in any other employment at Newport News, and that if Riley had applied for employment, Newport News would not have turned her away because of her injury. Riley began working at West Telemarketing on October 28, 1996, earning substantially less than she earned as a Newport News employee.

B.

These proceedings arose out of Riley's claim under the Longshore and Harbor Workers' Compensation Act for temporary total disability benefits from September 24, 1996 to October 28, 1996. A hearing was held in this case before Administrative Law Judge Fletcher E. Campbell, Jr. on May 4, 1998, in Newport News, Virginia. In a decision and order issued on October 5, 1998, Judge Campbell denied Riley's claim and made the following findings:

> - During the time period in which Riley continued to work for Newport News after her wrist injury, she could not

5

return to her regular and usual employment and, thus, established her <u>prima facie</u> case of total disability.

- Newport News did not establish the existence of suitable alternate employment during the time period, but paid Riley a wage equal to her pre-injury wage at the time of discharge.

- Riley's discharge was based on her poor performance in the apprentice program; and because Riley did not prove that her injury played any part in her discharge, she was not entitled to benefits following her discharge.

Riley appealed this decision to the Benefits Review Board, and in an opinion issued on October 19, 1999, the Board reversed Judge Campbell's decision and order. The Board found that by the time Riley was discharged, she was unable to perform her usual work due to her injury. As a matter of law, the Board held that Riley's discharge from work for unsatisfactory performance did not prevent her from receiving disability benefits for an injury which preceded her discharge. The Board thus held that Newport News had the burden of demonstrating suitable alternative employment, and found, as had the ALJ, that Newport News had not met this burden. The Board therefore found Newport News liable to Riley. Newport News moved for reconsideration, arguing that because no work-related injury caused Riley's disability, her disability was not compensable under the Act. The Board denied this motion on April 10, 2000, and Newport News timely filed a Petition for Review with this Court.

II.

This Court reviews the Board's decisions for errors of law and to ascertain whether the Board adhered to its statutorily mandated standard for reviewing the ALJ's factual findings. <u>Gilchrist v. Newport News Shipbuilding & Dry Dock Co.</u>, 135 F.3d 915, 918 (4th Cir. 1998). The factual findings of the ALJ must be affirmed if supported by substantial evidence. 33 U.S.C.A. § 921(b)(3) (West 1986). Review of legal questions is de novo, and no deference is due to the Board's legal conclusions. <u>Gilchrist</u>, 135 F.3d at 918. Both the Supreme Court and this Court, however, have stated that the Office

6

of Workers' Compensation Programs' (OWCP's) interpretation of the Act in its briefs is entitled to some deference. See Metro. Stevedore Co. v. Rambo ("Rambo II"), 521 U.S. 121, 136 (1997) (citing OWCP's brief as the source of an interpretation of the Act, and stating that "the Director's reasonable interpretation of the Act brings at least some added persuasive force to our conclusion"); Norfolk Shipbuilding & Drydock Corp. v. Hord, 193 F.3d 797, 801 (4th Cir. 1999) ("We note that this is the result advocated by the Director of the Office of Workers' Compensation Programs, to whose reasonable interpretation of the LHWCA we accord some deference.").

A burden-shifting proof scheme applies to claims under the Act. The claimant bears the initial burden of establishing a prima facie case of disability. Newport News Shipbuilding & Dry Dock Co. v. OWCP (Chappell), 592 F.2d 762, 764-65 (4th Cir. 1979). If the claimant establishes this prima facie case, the burden shifts to the employer to demonstrate the availability of suitable alternative employment within the geographic area where the claimant resides. See v. Washington Metro. Area Transit Auth., 36 F.3d 375, 380 (4th Cir. 1994). The claimant may then counter this showing by demonstrating a diligent but unsuccessful search for suitable alternative employment. Id.

Newport News argues that Riley's wage-earning disability resulted from her termination, not her injury. Because Riley's termination was for good cause, and was not a result of her injury, Newport News argues that Riley was not disabled at all within the meaning of the Act. In support of this proposition, Newport News cites Marino v. Navy Exchange, 20 BRBS 166 (1988), which held that "psychological injury resulting from a legitimate personnel action . . . is not compensable under the Act." Id. at *2. Newport News also cites Brooks v. Newport News Shipbuilding & Dry Dock Co., 26 BRBS 1 (1992), aff'd, 2 F.3d 64 (4th Cir. 1993) (per curiam), which held that when an injured employee is given suitable alternative employment which is within his medical restrictions, and the employee is then fired from that position for providing false information on an employment application, no benefits are due. See id. at *3 ("In cases where alternate employment is terminated for reasons unrelated to claimant's disability, he is not entitled to further benefits."). Unlike the situation in Brooks, however, here the ALJ found as a factual matter that Riley

7

was not performing suitable alternative employment within Newport News when she was terminated.

We are bound to follow Norfolk Shipbuilding & Drydock Corp. v. Hord, 193 F.3d 797 (4th Cir. 1999). In that case, we held that the non-discriminatory nature of a termination of employment does not suffice to carry the employer's burden of showing the availability of suitable alternative employment following a prima facie case of disability. See id. at 801 n.3 (stating that although Norshipco argued that its decision to lay off a benefits claimant "was unrelated to his injury. . . . Norshipco's proffer of the economic and nondiscriminatory nature of its decision to lay Hord off is not responsive to its burden of demonstrating that Hord had the capacity to earn wages in suitable alternative employment which was reasonably available to Hord."). Thus, if Riley has made out a prima facie case of disability, Newport News must demonstrate the availability of suitable alternative employment in order to prevail.

Here, the ALJ found as a factual matter that Riley's employment after her injury until the date of her termination was incompatible with her medical restrictions. Marino is distinguishable because in that case, the claimed disability was the psychological trauma caused by termination; here, Riley alleges that her wrist injury, not her termination, constitutes her disability. Marino, 20 BRBS 166, at *2. Newport News misapprehends both the proof scheme applied in this Circuit to cases arising under the Act and the Act's definition of "disability," as interpreted by the courts.

Whether an injury is a disability is determined by comparing the employee's medical restrictions to her job responsibilities. Compare Brooks v. OWCP, 2 F.3d 64, 65 (4th Cir. 1993) (per curiam) (stating that an employee establishes a prima facie case of disability by demonstrating that she is unable to return to her usual employment due to a work-related injury), with Curit v. Bath Ironworks Corp., 22 BRBS 100 (1988) (whether a claimant is precluded from returning to his usual employment is a finding of fact to be made by comparing the claimant's medical restrictions with the requirements of her employment). The resulting determination that the employee has made out a prima facie case of disability is a question of fact reviewable by this Court only under a "substantial evidence" standard of review. See Banks v. Chicago Grain Trimmers Ass'n, 390 U.S. 459,

8

467 (1968) (stating the "substantial evidence" standard under the LHWCA); 33 U.S.C.A. § 921(b)(3).

The ALJ found that Riley made out a prima facie case of total disability because she was expected to perform duties that were incompatible with her medical restrictions and could not perform her job duties without substantial help from others due to her wrist injury. See Del Vacchio v. Sun Shipbuilding & Dry Dock Co., 16 BRBS 190, 194 (1984) (worker is totally disabled if worker cannot do her usual work adequately, regularly, full-time and with no undue help from others). The evidence relevant to this conclusion is in conflict; some evidence indicates that Riley received no actual assistance from others, while other evidence is contrary, and Riley's work restrictions after September 10 did not prohibit "gripping" or "repetitive motion" with her right wrist, only grinding and the use of impact or vibratory tools with her right hand. Nevertheless, a reasonable finder of fact could conclude (1) that Riley received substantial assistance from others following her injury, and (2) that regardless of whether Riley's post-September 10 restrictions prohibited gripping and repetitive motion with her right hand, her inability to use vibratory or impact tools with her right hand impeded her work performance sufficiently to prevent her from doing her usual work adequately. Thus, some evidence supports the ALJ's finding that Riley made out a prima facie case of disability.

Because Hord holds that an employer may not rebut a prima facie showing of disability by showing that an employee was terminated for cause from alternate employment that is within the employee's restrictions, it follows that Newport News may not rely on such a claim where, unlike the situation in Hord, the claimant was not even in a suitable alternate position at the time of discharge. Riley made out a prima facie case of disability, and Newport News has not rebutted this case by showing that there was any suitable alternative employment available either within or without the company; Newport News instead contends simply that Riley was terminated for poor performance, which under Hord does not enable Newport News to carry its burden of showing the availability of suitable alternative employment. Riley has thus made out a prima facie case of disability, and Newport News has presented no viable defense to liability under the Act. The decision of the Benefits Review Board is therefore affirmed.

AFFIRMED

9