**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0399n.06

**No. 09-3317**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jul 02, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| MARATHON ASHLAND PETROLEUM, MARATHON ASHLAND PETROLEUM CO., | ) ) ) | |
| *Petitioners*, | ) ) | ON APPEAL FROM THE BENEFITS REVIEW BOARD, |
| v. | ) ) | U.S. DEPARTMENT OF LABOR |
| BILL B. WILLIAMS; DIRECTOR, OFFICE OF WORKERS COMPENSATION, | ) ) ) | **O P I N I O N** |
| *Respondents*, | ) ) | |

BEFORE:    **MERRITT, COLE, and COOK**, Circuit Judges.

**COLE, Circuit Judge.**  This case arises out of a claim for workers' compensation benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA" or "Longshore Act"), 33 U.S.C. § 901, *et seq.*, which provides for compensation to injured maritime employees.  Petitioners Marathon Ashland Petroleum and Marathon Ashland Petroleum Co. ("Marathon") appeal the decision of the Benefits Review Board of the United States Department of Labor ("BRB") affirming an order of the Administrative Law Judge ("ALJ") awarding benefits to Respondent Bill Williams. Williams had worked at Marathon for a quarter-century, most recently as a barge welder, and injured his right shoulder in February 2003.  Marathon argues that the ALJ's decision is not supported by substantial evidence.  Because the ALJ's decision is inadequate to accommodate a thorough review, we **REMAND** to the ALJ for further development.

## I. BACKGROUND

Bill Williams had worked at Marathon's Ashland, Kentucky, facility for twenty-five years, most recently as a senior barge welder. His job required considerable overhead heavy lifting, such as repeatedly carrying 150-pound weights. Williams alleged that he sustained a long thoracic nerve injury to his right shoulder while replacing parts of a barge at work on February 13, 2003. He had been experiencing pains in his right shoulder and right arm six to eight months prior to the accident, and his injury was likely the result of the cumulative effect of his heavy lifting. Since the injury, Williams has not returned to work and has been seen by multiple physicians. These physicians, as explained more fully below, do not agree on a common diagnosis for Williams.

Three days after the accident, Williams began treatment with Dr. Michael Goodwin, an orthopedist, who ultimately diagnosed him with a long thoracic nerve problem. Dr. Goodwin continued to see Williams roughly once a month until Dr. Goodwin diagnosed him as permanently unable to work in July 2003. Despite this diagnosis, on March 30, 2004, Dr. Goodwin provided Williams with specific restrictions, including a prohibition on lifting more than five pounds with his right arm and all overhead work. Dr. Goodwin wrote a letter to Marathon on June 22, 2005, indicating that Williams could not return to work as a welder, since it required heavy lifting and overhead work. Following an October 3, 2005, visit, Dr. Goodwin opined that Williams' condition would never improve.

Dr. Goodwin also referred Williams to Dr. John Brems, an orthopedist and shoulder specialist. On April 17, 2003, Dr. Brems recommended that Williams cease work until September 2003 and undergo an Electromyogram test ("EMG") in August to determine if the nerve was healing.

Dr. Goodwin, however, did not perform the repeat EMG because, as he explained in his deposition testimony, he was more interested in clinical recovery than nerve studies.

On May 25, 2004, Marathon sent Williams to Dr. Michael Best, an orthopedic surgeon and expert in long thoracic nerve injuries. The visit, and another on March 1, 2005, lasted approximately five minutes each. Dr. Best agreed with Dr. Brems' treatment recommendation and had Williams undergo two EMGs and two functional capacity exams. Dr. Joseph Zerga performed the EMGs and concluded after Williams' EMG in July 2004 that Williams could not perform the work of a barge welder or any other work that required heavy lifting above shoulder-level on his right-hand side but could do activity that did not require heavy lifting. Dr. Zerga performed another EMG in November 2004 and concluded that Williams' nerve injury had healed.

Williams' second exam with Dr. Best, which occurred on March 1, 2005, showed that Williams' long thoracic nerve injury had healed. Dr. Best had Williams undergo functional capacity evaluations and concluded that Williams possessed a full range of motion with no strength deficit and had no long-term or permanent impairment. He therefore considered Williams capable of returning to his former welding position, which had since been modified to include the use of hoists and an additional individual to assist with lifting and carrying duties. Despite this conclusion, Dr. Best noted that Williams' efforts throughout testing were inconsistent and that he was unaware of the specifics of Williams' prior job description. Even more, Dr. Best later revised his prior opinion and concluded that Williams was not capable of meeting the demands of his former position and that his safe-work capabilities were within the medium to heavy work category.

Based on Dr. Best's March exam, Marathon sent Williams a return-to-work notice on May 12, 2005. Williams reported to work on May 31, 2005, but told Marathon officials that he could not perform his duties. In the meantime, Williams continued to refrain from working. More than a year later, Marathon had a vocational expert prepare a transferable skills analysis/Labor Market Survey report to determine Williams' capabilities for alternate employment. The report noted that Williams could not return to his pre-injury employer as a welder/longshoreman, but listed nine alternate positions that he could perform. The expert completed a second Labor Market Survey on October 30, 2006, which listed ten employers within thirty miles of Ashland, Kentucky, who indicated they were hiring for positions Williams was capable of performing. Williams testified that he did not contact any of the prospective alternate employers because he had a foot gout ailment.

Following Williams' claim for Longshore Act benefits, the ALJ entered an order on May 7, 2008, awarding Williams total disability compensation under the LHWCA. The ALJ determined that Williams reached maximum medical improvement ("MMI") on May 31, 2005. MMI "is reached at that point where a physician believes that further treatment will not improve a claimant's condition." *Morehead Marine Servs., Inc. v. Washnock*, 135 F.3d 366, 375 (6th Cir. 1998). As a result, the ALJ awarded Williams temporary total disability benefits from February 15, 2003, through May 31, 2005, and permanent total disability benefits thereafter. The ALJ found that Williams could not return to his former barge-welding position at Marathon and that Marathon had not satisfied its burden of establishing the availability of suitable alternate employment. The ALJ credited Dr. Goodwin's opinion of October 5, 2005, that Williams' shoulder would never improve and

discredited Dr. Best's opinion because he indicated he was unaware of the physical requirements of Williams' job. Furthermore, the ALJ credited Williams' own testimony.

Marathon appealed the ALJ's decision to the BRB, which affirmed the decision on January 27, 2009. Marathon then petitioned this Court for review.

## II.  ANALYSIS

### A.    Standard of review

"This court reviews ALJ and BRB decisions on a limited basis." *Pittsburgh & Conneaut Dock Co. v. Dirs., Office of Workers' Comp. Programs*, 473 F.3d 253, 258 (6th Cir. 2007). "The decision of an ALJ is reviewed to determine whether it is supported by substantial evidence and consistent with applicable law." *Id.* We review the BRB's legal conclusions de novo and independently review the record to see if the BRB properly ruled on whether the ALJ's findings are supported by substantial evidence. *Id.* "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 259 (quotation marks omitted).

### B.    Application

To establish a claim for disability benefits under the LHWCA, an employee must establish the presence of a "disability." *Washnock*, 135 F.3d at 371. The LHWCA defines disability as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." 33 U.S.C. § 902(10). Two steps determine the existence of a disability:

> Once a claimant establishes a prima facie case of total disability by showing that he or she can no longer perform his or her usual work because of a work-related injury, the burden shifts to the employer to demonstrate the availability of suitable alternative employment that the claimant is capable of performing in the geographical area and that he or she could secure if he or she diligently tried.

*Washnock*, 135 F.3d at 372.

In this case, we find the ALJ's reasoning for its conclusion that Williams reached MMI on May 31, 2005, and is therefore entitled to receive permanent disability benefits from that date, to be "inadequate . . . to accommodate a thorough review." *Dir., OWCP v. Congleton*, 743 F.2d 428, 429 (6th Cir. 1984). As required by the Administrative Procedure Act, an ALJ's decision must include a discussion of "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c)(3)(A). *See also Washnock*, 135 F.3d at 375. According to Dr. Best, Williams reached MMI on March 1, 2005. The parties stipulated that, according to Dr. Goodwin, Williams has yet to reach MMI. Yet, Dr. Goodwin's office notes from October 3, 2005, indicate that he did not anticipate that Williams' shoulder would ever improve. The ALJ found that Williams' attempt to return to work on May 31, 2005, established that this was his date of MMI. We question whether this was appropriate. While Williams' inability to perform his prior job duties may indicate that he was permanently disabled as of May 31, 2005, it does not necessarily indicate that this was the date he reached MMI. Especially given that Williams was examined by Dr. Goodwin on two occasions subsequent to May 31, 2005, we think the ALJ's explanation for establishing May 31, 2005, as the date of MMI needs to be more thoroughly explained.

As such, we **VACATE** the decision of the BRB and **REMAND** to the ALJ for further findings of fact and such other relief as is appropriate. Accordingly, we do not reach the question of whether Williams is entitled to attorney's fees from Marathon.