*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0306p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MARATHON ASHLAND PETROLEUM;
MARATHON ASHLAND PETROLEUM
COMPANY, L.L.C., c/o Frank Gates Service
Company,

　　　　　　　　　　　　　　*Petitioners*,

　　　*v.*

BILL B. WILLIAMS; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,
　　　　　　　　　　　　　　*Respondents.*

No. 12-4377

Upon Petition for Review of a Decision and Order
of the Benefits Review Board.
Nos. OWCP No. 06-1560; BRB No. 12-0051.

Decided and Filed: October 24, 2013

Before: COOK, GRIFFIN, and KETHLEDGE, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** John L. Duvielh, JONES, WALKER, WAECHTER, POITEVENT, CARRÈRE & DENÈGRE, L.L.P., New Orleans, Louisiana, for Petitioners. John J. Osterhage, Florence, Kentucky, for Respondent Williams.

_____

## OPINION

_____

GRIFFIN, Circuit Judge. Petitioners Marathon Ashland Petroleum and Marathon Ashland Petroleum Company, LLC ("Marathon") appeal—for the second time—a decision of the Benefits Review Board of the U.S. Department of Labor affirming an order of an administrative law judge awarding permanent and total disability benefits to respondent Bill Williams under the Longshore and Harbor Workers' Compensation Act,

33 U.S.C. § 901, et seq.  In adjudicating Marathon's first petition for review, a panel of this court declined to address the substance of Marathon's challenge and instead remanded for further proceedings because we held that the administrative record was inadequate regarding the date on which Williams became eligible for benefits.  *See Marathon Ashland Petroleum v. Williams*, 384 F. App'x 476 (6th Cir. 2010).  On remand, the ALJ and the board discussed in great detail the precise date on which Williams became eligible for permanent and total disability benefits.  In its second petition for review, Marathon advances the same arguments that the previous panel did not consider in the first petition, which are that the board erred in affirming the ALJ's findings that Williams is permanently and totally disabled and that he is unable to perform the alternative employment identified by Marathon's vocational expert.  For the reasons that follow, we deny the petition and grant Williams leave to file a motion for attorney fees under 33 U.S.C. § 928(a).

I.

The following background facts are taken from this court's previous opinion in *Marathon Ashland Petroleum v. Williams*, 384 F. App'x 476 (6th Cir. 2010).

> Bill Williams had worked at Marathon's Ashland, Kentucky, facility for twenty-five years, most recently as a senior barge welder.  His job required considerable overhead heavy lifting, such as repeatedly carrying 150-pound weights.  Williams alleged that he sustained a long thoracic nerve injury to his right shoulder while replacing parts of a barge at work on February 13, 2003.  He had been experiencing pains in his right shoulder and right arm six to eight months prior to the accident, and his injury was likely the result of the cumulative effect of his heavy lifting.  Since the injury, Williams has not returned to work and has been seen by multiple physicians.  These physicians, as explained more fully below, do not agree on a common diagnosis for Williams.
>
> Three days after the accident, Williams began treatment with Dr. Michael Goodwin, an orthopedist, who ultimately diagnosed him with a long thoracic nerve problem.  Dr. Goodwin continued to see Williams roughly once a month until Dr. Goodwin diagnosed him as permanently unable to work in July 2003.  Despite this diagnosis, on March 30, 2004, Dr. Goodwin provided Williams with specific restrictions, including a prohibition on lifting more than five pounds with his right arm and all

overhead work.  Dr. Goodwin wrote a letter to Marathon on June 22, 2005, indicating that Williams could not return to work as a welder, since it required heavy lifting and overhead work.  Following an October 3, 2005, visit, Dr. Goodwin opined that Williams' condition would never improve.

Dr. Goodwin also referred Williams to Dr. John Brems, an orthopedist and shoulder specialist.  On April 17, 2003, Dr. Brems recommended that Williams cease work until September 2003 and undergo an Electromyogram test ("EMG") in August to determine if the nerve was healing.  Dr. Goodwin, however, did not perform the repeat EMG because, as he explained in his deposition testimony, he was more interested in clinical recovery than nerve studies.

On May 25, 2004, Marathon sent Williams to Dr. Michael Best, an orthopedic surgeon and expert in long thoracic nerve injuries.  The visit, and another on March 1, 2005, lasted approximately five minutes each.  Dr. Best agreed with Dr. Brems' treatment recommendation and had Williams undergo two EMGs and two functional capacity exams.  Dr. Joseph Zerga performed the EMGs and concluded after Williams' EMG in July 2004 that Williams could not perform the work of a barge welder or any other work that required heavy lifting above shoulder-level on his right-hand side but could do activity that did not require heavy lifting.  Dr. Zerga performed another EMG in November 2004 and concluded that Williams' nerve injury had healed.

Williams' second exam with Dr. Best, which occurred on March 1, 2005, showed that Williams' long thoracic nerve injury had healed.  Dr. Best had Williams undergo functional capacity evaluations and concluded that Williams possessed a full range of motion with no strength deficit and had no long-term or permanent impairment.  He therefore considered Williams capable of returning to his former welding position, which had since been modified to include the use of hoists and an additional individual to assist with lifting and carrying duties.  Despite this conclusion, Dr. Best noted that Williams' efforts throughout testing were inconsistent and that he was unaware of the specifics of Williams' prior job description.  Even more, Dr. Best later revised his prior opinion and concluded that Williams was not capable of meeting the demands of his former position and that his safe-work capabilities were within the medium to heavy work category.

Based on Dr. Best's March exam, Marathon sent Williams a return-to-work notice on May 12, 2005.  Williams reported to work on May 31, 2005, but told Marathon officials that he could not perform his duties.  In the meantime, Williams continued to refrain from working.  More than a year later, Marathon had a vocational expert prepare a

transferable skills analysis/Labor Market Survey report to determine Williams' capabilities for alternate employment. The report noted that Williams could not return to his pre-injury employer as a welder/longshoreman, but listed nine alternate positions that he could perform. The expert completed a second Labor Market Survey on October 30, 2006, which listed ten employers within thirty miles of Ashland, Kentucky, who indicated they were hiring for positions Williams was capable of performing. Williams testified that he did not contact any of the prospective alternate employers because he had a foot gout ailment.

Following Williams' claim for Longshore Act benefits, the ALJ entered an order on May 7, 2008, awarding Williams total disability compensation under the [Act]. The ALJ determined that Williams reached maximum medical improvement ("MMI") on May 31, 2005. MMI is reached at that point where a physician believes that further treatment will not improve a claimant's condition. As a result, the ALJ awarded Williams temporary total disability benefits from February 15, 2003, through May 31, 2005, and permanent total disability benefits thereafter. The ALJ found that Williams could not return to his former barge-welding position at Marathon and that Marathon had not satisfied its burden of establishing the availability of suitable alternate employment. The ALJ credited Dr. Goodwin's opinion of October 5, 2005, that Williams' shoulder would never improve and discredited Dr. Best's opinion because he indicated he was unaware of the physical requirements of Williams' job. Furthermore, the ALJ credited Williams' own testimony.

Marathon appealed the ALJ's decision to the [benefits review board], which affirmed the decision on January 27, 2009. Marathon then petitioned this [c]ourt for review.

*Id.* at 477–78 (internal quotation marks and citation omitted).

After reviewing the administrative record, this court concluded: "we find the ALJ's reasoning for its conclusion that Williams reached MMI on May 31, 2005, and is therefore entitled to receive permanent disability benefits from that date, to be 'inadequate . . . to accommodate a thorough review.'" *Id.* at 479 (quoting *Dir., Office of Workers' Comp. Programs v. Congleton*, 743 F.2d 428, 429 (6th Cir. 1984)). Our court explained:

According to Dr. Best, Williams reached MMI on March 1, 2005. The parties stipulated that, according to Dr. Goodwin, Williams has yet to

reach MMI. Yet, Dr. Goodwin's office notes from October 3, 2005, indicate that he did not anticipate that Williams' shoulder would ever improve. The ALJ found that Williams' attempt to return to work on May 31, 2005, established that this was his date of MMI. We question whether this was appropriate. While Williams' inability to perform his prior job duties may indicate that he was permanently disabled as of May 31, 2005, it does not necessarily indicate that this was the date he reached MMI. Especially given that Williams was examined by Dr. Goodwin on two occasions subsequent to May 31, 2005, we think the ALJ's explanation for establishing May 31, 2005, as the date of MMI needs to be more thoroughly explained.

*Id.* We therefore remanded for further administrative proceedings.

On remand, the ALJ determined that, based on Dr. Goodwin's controlling medical opinion, Williams reached MMI on October 3, 2005, not May 31, 2005. Other than altering the MMI date, the benefits award remained unchanged. The benefits review board affirmed, and Marathon's timely petition for review followed.

## II.

## A.

Our review of decisions of an ALJ and the benefits review board is limited. *Pittsburgh & Conneaut Dock Co. v. Dir., Office of Workers' Comp. Programs*, 473 F.3d 253, 258 (6th Cir. 2007). An ALJ's decision is reviewed to determine whether it is consistent with applicable law and supported by substantial evidence. *Id.* "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 259 (internal quotation marks and citation omitted). Our scope of review is "exceedingly narrow" when the question is whether the ALJ reached the correct result after weighing conflicting medical evidence. *Id.* (internal quotation marks and citation omitted). As for the board's decision, we review its legal conclusions de novo and independently review the record to see if it properly determined whether the ALJ's findings are supported by substantial evidence. *Id.* at 258. "The record must be

reviewed as a whole, including whatever in the record fairly detracts from its weight." *Id.* at 259 (internal quotation marks and citation omitted).

B.

The parties dispute whether the board erred in affirming the ALJ's determination that Williams was permanently and totally disabled as of October 3, 2005. Disability claims under the Longshore Act are governed by a burden-shifting scheme. *Morehead Marine Servs., Inc. v. Washnock*, 135 F.3d 366, 372 (6th Cir. 1998). A claimant establishes a prima facie case of total disability by showing that he can no longer perform his "usual work" because of a work-related injury. *Id.*; *see also Bunge Corp. v. Carlisle*, 227 F.3d 934, 941 (7th Cir. 2000) ("To gain an award of benefits for total disability under the [Longshore Act], a claimant must first establish a prima facie case by demonstrating that he cannot perform his prior employment due to the effects of a work-related injury."). A claimant's "usual work" is defined by his regular duties at the time of his injury. *Manigault v. Stevens Shipping Co.*, 22 Ben. Rev. Bd. Serv. 332 (1989). In determining whether a claimant can return to his "usual work," the ALJ must compare the claimant's medical restrictions with the physical requirements of his job. *See Newport News Shipbuilding & Dry Dock Co. v. Riley*, 262 F.3d 227, 232 (4th Cir. 2001) ("Whether an injury is a disability is determined by comparing the employee's medical restrictions to her job responsibilities."). If a claimant establishes a prima facie case, "the burden shifts to the employer to demonstrate the availability of suitable alternative employment that the claimant is capable of performing in the geographical area and that he or she could secure if he or she diligently tried." *Washnock*, 135 F.3d at 372; *see also Universal Mar. Corp. v. Moore*, 126 F.3d 256, 264 (4th Cir. 1997) (employer rebuts a prima facie case of disability "by presenting evidence of other jobs that are available in the relevant geographic market for which the claimant is physically and educationally qualified").

The board did not err in concluding that the record contains substantial evidence to support the ALJ's finding that Williams established a prima facie case because he cannot return to his "usual work" as a senior barge welder. First, Dr. Goodwin,

Williams' treating doctor who is board certified in orthopedic surgery, testified that Williams would not be able to return to his previous position because his permanent right-shoulder weaknesses and functional limitations, which include a twenty-pound lift restriction upon his right arm and no overhead work, prevent him from performing the very heavy-duty work of a barge welder. Second, Williams, a twenty-five year veteran employee of Marathon, testified that there was simply "no way" he could return to his former position. The ALJ placed "great weight" on Williams' testimony. Third, Dr. Kleykamp, Williams' general care physician, opined that because Williams cannot lift or work overhead, he is unable to perform the duties associated with a senior barge welder.

Additionally, and contrary to Marathon's assertion, the board and the ALJ did not irrationally discount the conflicting medical opinion of Dr. Best, Marathon's review doctor. Although Dr. Best opined that Williams was fully healed and ready to return to work in March 2005 with no functional limitations, Williams treated with Dr. Goowin three times *after* Dr. Best last saw him, and Dr. Goodwin observed that the winging of Williams' right scapula was still present and opined that his patient had not yet recovered and was unlikely to ever fully recover. And although Dr. Best opined that Williams could return to work because his former position had since been modified to reduce his work load, as the board correctly noted, this opinion does not support a finding that he could return to the "usual work" Williams performed at the time of injury. Also, Williams testified that when he attempted to return to work in May 2005, he could not perform even the "modified" position. Ultimately, the ALJ acted within her discretion when crediting Williams' testimony and the medical opinion of his treating doctor over that of Marathon's review doctor. *See Bunge*, 227 F.3d at 940 ("[T]he ALJ determines the weight to be accorded to evidence and makes credibility determinations. Moreover, where the testimony of medical experts is at issue, the ALJ is entitled to accept any part of an expert's testimony or reject it completely."). Accordingly, the board did not err in affirming the ALJ's determination that Williams established a prima facie case of total disability.

C.

Because Williams established a prima facie case, the burden shifts to Marathon to "demonstrate the availability of suitable alternative employment that the claimant is capable of performing in the geographical area and that he or she could secure if he or she diligently tried." *Washnock*, 135 F.3d at 372. To meet this burden, Marathon must offer sufficient evidence from which the ALJ could determine that there were jobs available in Williams' community that he could likely secure and realistically perform, taking into consideration his functional capabilities, age, background, education, and training. *See Bunge*, 227 F.3d at 941; *Moore*, 126 F.3d at 264; *Louisiana Ins. Guar. Ass'n v. Abbott*, 40 F.3d 122, 127 (5th Cir. 1994).

The board did not err in affirming the ALJ's determination that Marathon had failed to carry its burden of identifying "suitable alternative employment" that Williams is capable of performing. We conclude that the decision by the board is supported by substantial evidence. Marathon's vocational expert Julie Hathaway identified twenty jobs in two separate reports that she believed Williams could perform. However, she failed to consider Dr. Goodwin's work restrictions when drafting her report, which the ALJ determined were controlling. For example, Hathaway included a number of sedentary and light duty jobs in her report, but provided no information as to whether those jobs complied with Dr. Goodwin's restrictions, specifically the prohibition on overhead lifting. Instead, the jobs she identified are based on Dr. Best's opinion of Williams' abilities, which the ALJ afforded little weight. If—as is the case here—an employer's vocational expert does not identify jobs compatible with the claimant's work restrictions, the expert's opinion cannot satisfy the employer's burden of establishing suitable alternative employment. *Uglesich v. Stevedoring Servs. of America*, 24 Ben. Rev. Bd. Serv. 180 (1991). Put a different way, the jobs in Hathaway's reports are truly "mirages" as Williams suggests because they are based on functional limitations contained in a discredited medical opinion and are not jobs that Williams can "realistically perform." *New Orleans (Gulfwide) Stevedores v. Turner*, 661 F.2d 1031, 1043 (5th Cir. 1981). The board therefore properly affirmed the ALJ's finding that

Marathon failed to rebut Williams' prima facie case of disability. Accordingly, we deny Marathon's petition for review.

## III.

Finally, Williams requests leave to file a motion for appellate attorney fees. Pursuant to 33 U.S.C. § 928(a), a Longshore Act claimant who utilizes the services of an attorney and successfully prosecutes a disputed liability claim for benefits is entitled to an award of attorney fees for work done on appeal from the board. *See* 33 U.S.C. § 928(a) ("If the employer . . . declines to pay any compensation on . . . a claim . . . on the ground that there is no liability . . . and the person seeking benefits shall thereafter have utilized the services of an attorney at law in the successful prosecution of his claim, there shall be awarded . . . a reasonable attorney's fee against the employer . . . in an amount approved by the . . . court . . . which shall be paid directly by the employer . . . to the attorney for the claimant in a lump sum after the compensation order becomes final."); 20 C.F.R. § 702.132 ("Any person seeking a fee for services performed on behalf of a claimant with respect to claims filed under the [Longshore] Act shall make application therefor to the . . . court . . . before whom the services were performed[.]"); *see also Ford Aerospace & Commc'ns Corp. v. Boling*, 684 F.2d 640, 643 (9th Cir. 1982) (court of appeals has authority to grant attorney fees for work done on appeal from the board, but no authority to grant fees for work at the administrative level).

We grant the request by Williams to file a motion for appellate attorney fees. Williams may file within 21 days of the date of this opinion a motion for attorney fees, supported by an affidavit of counsel. Marathon may respond within 14 days thereafter. We retain further jurisdiction regarding the award of attorney's fees.

## IV.

For these reasons, we deny the petition and grant respondent Williams leave to file a motion for attorney fees under 33 U.S.C. § 928(a).