**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1256
_____

GLOBAL TERMINAL & CONTAINER SERVICES, INC;
SIGNAL MUTUAL INDEMNITY ASSOCIATION, LTD,
                                        Petitioners

v.

DIRECTOR OFFICE OF WORKERS COMPENSATION PROGRAMS
UNITED STATES DEPARTMENT OF LABOR; MOHAMED ELGHOBASHY
_____

On Petition for Review of a
Decision of the United States Department of Labor
Benefits Review Board
(BRB No. 22-0332)
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 11, 2025
_____

Before: SHWARTZ, RESTREPO, and CHUNG, <u>Circuit Judges</u>

(Filed: April 24, 2025)
_____

OPINION[*]
_____

CHUNG, <u>Circuit Judge</u>.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Global Terminal & Container Services, Inc. (Global)[1] petitions for review of a decision of the United States Department of Labor Benefits Review Board (Board) affirming an administrative law judge's (ALJ) decision granting Mohamed A. Elghobashy (Claimant) benefits under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 et seq. Global argues that the ALJ's conclusions that Claimant was entitled to benefits and totally disabled were not supported by substantial evidence. We disagree and will deny the petition for review.

I.      BACKGROUND[2]

Claimant is a longshoreman with a history of neck and back injuries. At all times relevant to this appeal, Claimant was employed by Global[3] as a hustler driver. A hustler is a vehicle, similar to a semi-truck, used to move shipping containers. The hustler attaches to a trailer, and the trailer, in turn, carries shipping containers. Cranes use spreader bars to place shipping containers onto the trailer or remove them from the trailer.

Claimant asserts that he suffered an injury on January 29, 2014, when a spreader bar being lowered to remove a container from his hustler hit the container or hustler,

---

[1]     Global petitions for review alongside its insurance carrier, Signal Mutual Indemnity Association, Ltd. Unless otherwise noted, we will refer to both parties together as "Global."

[2]     Because we write for the parties, we recite only facts pertinent to our decision.

[3]     In this instance, "Global" only refers to Global Terminal & Container Services, Inc.

jostling the hustler and injuring Claimant.[4]  Claimant sought compensation and medical benefits.  Global contested whether Claimant was injured at work during this incident and the extent of Claimant's disability.

A hearing was held before an ALJ.  The ALJ found that Claimant suffered an injury arising out of his employment on January 29, 2014, and that his injuries rendered him permanently and totally disabled.  Accordingly, the ALJ awarded Claimant compensation and medical benefits.  Global appealed to the Board, and the Board affirmed.

Global filed a petition for review.

II.    STANDARD OF REVIEW[5]

"We review the Board's decision only to determine whether the Board acted in conformance with applicable law and within its proper scope of review."  Wilson v. Dir., Off. of Workers' Comp. Programs, 984 F.3d 265, 269 (3d Cir. 2020) (internal quotation marks omitted).  Our review of the Board's legal conclusions is plenary, and we "must independently review the record and decide whether the ALJ's factual findings are rational, consistent with applicable law and supported by substantial evidence if those findings are challenged by a petitioner."  Id. at 269–70 (internal quotation marks and

---

[4]    Claimant also sought compensation for an incident which occurred on April 24, 2013, and was a contributing factor to the claims related to the January 2014 incident. The parties stipulated that the 2013 incident occurred and that Claimant was injured as a result.  We need not address that incident to dispose of this petition.

[5]    The ALJ had jurisdiction under 33 U.S.C. § 919(d), and the Board had jurisdiction under 33 U.S.C. § 921(b).  We have jurisdiction under 33 U.S.C. § 921(c).

brackets omitted).

"Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla." C & C Marine Maint. Co. v. Bellows, 538 F.3d 293, 297 (3d Cir. 2008) (internal quotation marks and brackets omitted). It "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidation Coal Co. v. Benefits Rev. Bd., 629 F.3d 322, 326 (3d Cir. 2010) (internal quotation marks omitted). "If substantial evidence exists, we must affirm the ALJ's interpretation of the evidence even if we might have interpreted the evidence differently in the first instance." Balsavage v. Dir., Off. of Workers' Comp. Programs, 295 F.3d 390, 395 (3d Cir. 2002) (internal quotation marks omitted). In addition, credibility determinations made by the ALJ may not be overturned unless they "conflict with the clear preponderance of the evidence, or where the determinations are 'inherently incredible or patently unreasonable.'" Cordero v. Triple A Mach. Shop, 580 F.2d 1331, 1335 (9th Cir. 1978) (citations omitted) (quoting NLRB v. Anthony Co., 557 F.2d 692, 695 (9th Cir. 1977)).

III.    DISCUSSION

Global argues that the ALJ's conclusions that Claimant was entitled to benefits and that he was totally disabled were not supported by substantial evidence. We disagree and will deny the petition.

A.    The ALJ's Decision that Claimant Was Entitled to Benefits Was Supported by Substantial Evidence

Global argues that the ALJ's decision to discredit the expert witness report of Dr. Anastasios Tsoumanis, which allegedly showed that the January 29, 2014 incident could

4

not have occurred as Claimant described it, was not supported by substantial evidence.

Dr. Tsoumanis's report details his attempts to recreate the incident and his conclusion, based on data obtained in that recreation, that the forces involved in the alleged incident would have been very minor and insufficient to injure Claimant. The ALJ discredited this report because it failed to accurately recreate the incident.

Global concedes that Dr. Tsoumanis's report inaccurately described the events of the January 2014 incident. The ALJ found that Claimant credibly testified that the January 2014 incident involved a top-loader's spreader bar striking his chassis or a container on his hustler, jostling his hustler. Dr. Tsoumanis's report does not reflect this. Instead, it suggests that "[Claimant] was in the hustler without wearing his seatbelt when the 40-foot container was dropped onto his trailer." App. 178. Because the ALJ credited Claimant's testimony, she had substantial evidence for her decision to reject the expert's conclusions, which were based on facts inconsistent with the Claimant's testimony.

Global argues that, despite the inaccurate language of the report, the testimony of Dr. Richard Baratta makes it clear that Dr. Tsoumanis accurately reconstructed the incident.[6] Dr. Baratta testified that the photograph captured Dr. Tsoumanis's test which involved *lowering a spreader bar* onto a container and then removing the container from the trailer. But the plain language of the report and its statement that the photograph captures an attempt to place a "cargo *container onto the trailer*" contradict Dr. Baratta's

---

[6]     Dr. Baratta testified in place of Dr. Tsoumanis for medical reasons.

testimony.  App. 176 (emphasis added).  Moreover, the photograph itself is at best inconclusive.  The photograph shows a container on a trailer with a spreader bar above the container, but it is unclear whether the photograph was taken before the container's removal or after its placement.  Given this inconclusiveness and the expert report's clear contrary description, we conclude that the ALJ's decision to discredit Dr. Tsoumanis's report and Dr. Baratta's testimony was supported by substantial evidence.  See Helen Mining Co. v. Elliot, 859 F.3d 226, 240 (3d Cir. 2017).[7]

B.      The ALJ's Decision that Claimant Was Totally Disabled Was Supported by Substantial Evidence

We apply a burden-shifting framework to determine whether a claimant is totally disabled.  First, a claimant must establish a prima facie case that he can no longer perform his prior employment because of a work-related injury.  E.g., Marathon Ashland Petroleum v. Williams, 733 F.3d 182, 187 (6th Cir. 2013).  If the claimant makes such a showing, "the burden shifts to the employer to demonstrate the availability of suitable alternative employment that the claimant is capable of performing in the geographical area and that he or she could secure if he or she diligently tried."  Id. at 188 (quoting Morehead Marine Servs., Inc. v. Washnock, 135 F.3d 366, 372 (6th Cir. 1998)).  A claimant may be considered totally disabled if an employer presents no evidence of alternative employment the employee could secure despite his disability.  See, e.g.,

---

[7]      Global also challenges the ALJ's decision to discredit Dr. Tsoumanis's report because the recreation was done on flat ground and the ALJ concluded that the incident occurred on uneven ground.  Because the ALJ's decision to discredit Dr. Tsoumanis's report was adequately supported by other substantial evidence, we do not reach this issue.

Roger's Terminal & Shipping Corp. v. Dir., Off. of Workers' Comp. Programs, 784 F.2d 687, 691 (5th Cir. 1986).

In reaching her conclusion that Claimant was totally disabled, the ALJ extensively analyzed the opinions of Claimant's expert orthopedic surgeon, Dr. Richard Rosa, and Global's expert orthopedic surgeon, Dr. Robert Dennis. The ALJ found Dr. Rosa's opinion that Claimant is permanently and totally disabled to be "well reasoned" and gave it "normal probative weight." App. 70. On the other hand, the ALJ found Dr. Dennis's contrary opinion to be "unreasoned" and gave it "little probative weight." App. 70–71.

One of the reasons for giving little weight to Dr. Dennis's report was that Dr. Dennis relied on Dr. Tsoumanis's discredited report. Global argues that this was not supported by substantial evidence because the ALJ erred in discrediting Dr. Tsoumanis's report. As we have already concluded that there was substantial evidence for the ALJ to discredit Dr. Tsoumanis's report, we reject this argument.

Global also argues that the ALJ failed to adequately consider Claimant's attempts to return to work and the fact that his treating physician, Dr. Marc Cohen, cleared him to return to work. The ALJ acknowledged these facts and determined that regardless of Claimant's attempts to return to work, "the preponderant medical evidence establishes a total and permanent disability." App. 73 n.43. This conclusion was supported by substantial evidence. Namely, Claimant testified—credibly, as the ALJ found—that he attempted to return to work due to his "miserable financial situation." App. 346. As we have explained in another context, "[a] claimant's return to work is not dispositive of his

7

or her disability when economic necessity compels him or her to return to work." Lasser v. Reliance Standard Life Ins. Co., 344 F.3d 381, 392 (3d Cir. 2003).

Turning to Dr. Cohen's decision to clear Claimant to return to work, as the ALJ explained, Dr. Cohen allowed Claimant to return to work because Claimant requested it. This testimony is supported by both Dr. Cohen's notes and Claimant's testimony explaining that he asked to be released to work as "a favor" due to his economic difficulties. App. 346. The work release was not a final definitive statement of Claimant's disability (or lack thereof). In granting the work release, Dr. Cohen informed Claimant that he should return to him if his symptoms became unmanageable and rendered him unable to work. Just over two months after being given the work release, during which time he did not resume his job, Claimant returned to Dr. Cohen due to persistent pain. At that time, Dr. Cohen described Claimant's work status as "unclear." App. 817. A few months later, Dr. Cohen explained that Claimant's work-related injuries left him with permanent "work limitations," motion limitations, and pain. App. 820. In light of the above, we conclude that the ALJ's decision that Claimant was fully disabled was supported by substantial evidence and that the ALJ adequately considered Dr. Cohen's return-to-work letter in making this determination. See Balsavage, 295 F.3d at 395.

Similarly, Global argues that the ALJ erred in concluding that Dr. Cohen's treatment notes supported Dr. Rosa's opinion. For reasons discussed above, however, the fact that Dr. Cohen released Claimant to work does not sufficiently undermine the ALJ's determination. The ALJ's decision to credit Dr. Rosa was supported by multiple other

considerations, including that Dr. Rosa personally examined Claimant multiple times and that his opinion was supported by the notes of other doctors (not just Dr. Cohen). See id. at 396 ("The ALJ has broad discretion to determine the weight accorded each doctor's opinion.").

Global also argues that the reason Claimant was unable to work was not his injury but his suspension by the Waterfront Commission. However, there was substantial evidence for the ALJ to conclude that Claimant was unable to work due to his medical condition. Moreover, one of Global's witnesses testified that a suspended worker could be returned to active status if they submitted medical documentation to the Waterfront Commission. Claimant testified that he provided his work release to the Waterfront Commission, and they approved him for work.

Because the ALJ's conclusion that Claimant was totally disabled is supported by substantial evidence, and because Global offered no evidence of suitable alternative employment for Claimant, Global's challenge fails. Roger's Terminal, 784 F.2d at 691.

IV.     CONCLUSION

For the foregoing reasons, we will deny the petition for review.

9